Citation Nr: 1220798 
Decision Date: 06/14/12 Archive Date: 06/22/12

DOCKET NO. 09-34 275 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in North Little Rock, Arkansas


THE ISSUE

Entitlement to an initial rating in excess of 30 percent for posttraumatic stress disorder (PTSD).


REPRESENTATION

Veteran represented by: Vietnam Veterans of America


WITNESS AT HEARING ON APPEAL

Veteran


ATTORNEY FOR THE BOARD

Kristy L. Zadora, Associate Counsel

INTRODUCTION

The Veteran had active duty service from September 1968 to September 1971.

This matter comes before the Board of Veterans' Appeals (Board) on appeal of a December 2007 Decision Review Officer (DRO) decision of the Little Rock, Arkansas Regional Office (RO) of the Department of Veterans Affairs (VA) which granted the Veteran's claim for service connection for PTSD and assigned an initial rating of 30 percent. 

A review of the Virtual VA paperless claims processing system reveals VA treatment records dated between January 2011 and December 2011. A Supplemental Statement of the Case was issued in December 2011.

The Veteran testified before the undersigned at a February 2012 RO (Travel Board) hearing. A hearing transcript has been associated with the claims file.


FINDING OF FACT

The Veteran's PTSD manifested as anxiety, panic attacks, flashbacks, nightmares, sleep difficulties, an exaggerated startle response, paranoia, selective isolation and the avoidance of socialization except for with immediate family members; the record was negative for obsessional rituals which interfered with routine activities, speech that was intermittently illogical, obscure or irrelevant, near-continuous panic or depression that affected the ability to function independently, appropriately and effectively, impaired impulse control, spatial disorientation, the neglect of personal appearance and hygiene, difficulty in adapting to stressful circumstances, an inability to establish and maintain effective relationships and impairments in the areas of work, family relations, judgment or thinking.





CONCLUSION OF LAW

The criteria for an initial rating of 50 percent (and no higher) for PTSD have been met. 38 U.S.C.A. §§ 1155, 5107(b) (West 2002); 38 C.F.R. §§ 3.102, 4.1-4.10, 4.126, 4.130, 9411 (2011).


REASONS AND BASES FOR FINDING AND CONCLUSION

Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations imposes obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2011); 38 C.F.R. §§ 3.102, 3.156(a), 3.326(a) (2011).

The appeal with regard to the instant claim arises from disagreement with the initial rating following the grant of service connection. The courts have held that once service connection is granted the claim is substantiated, additional VCAA notice is not required; and any defect in the notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007).

The Court of Appeals for Veterans Claims (CVAC) has elaborated that filing a notice of disagreement begins the appellate process, and any remaining concerns regarding evidence necessary to establish a more favorable decision with respect to downstream elements are appropriately addressed under the notice provisions of 38 U.S.C. §§ 5104 and 7105. Hartman, supra.

Where a claim has been substantiated after the enactment of the VCAA, a veteran bears the burden of demonstrating any prejudice from defective VCAA notice with respect to the downstream elements. Goodwin v. Peake, 22 Vet. App. 128 (2008). There has been no allegation of prejudice in this case with regard to the instant claim.
 
The VCAA requires VA to make reasonable efforts to help a claimant obtain evidence necessary to substantiate his or her claim. 38 U.S.C.A. §5103A; 38 C.F.R. §3.159(c)(d). VA will help a claimant obtain records relevant to his claim(s), whether or not the records are in Federal custody, and that VA will provide a medical examination and/or opinion when necessary to make a decision on the claim. 38 C.F.R. § 3.159(c)(4).

VA has met the duty to assist the Veteran in the development of the instant claim. The evidence of record includes the service treatment records, various private treatment records, Social Security Administration (SSA) records, VA treatment records and the VA examination reports. He testified at the February 2012 hearing that he received treatment at the VA facility in Little Rock and that he was not enrolled in a Vet Center. 

During the February 2012 hearing, the Veteran reported that his nightmares and flashbacks had worsened since his last examination. A veteran is entitled to a new VA examination where there is evidence that the condition has worsened since the last examination. Snuffer v. Gober, 10 Vet. App. 400 (1997); Caffrey v. Brown, 6 Vet. App. 377 (1994); VAOPGCPREC 11-95 (1995). However, these symptoms are reflected the initial rating assigned herein. Moreover, the VA examination reports and the VA medical records may be accepted as adequate reports of examination of the Veteran, without further VA examination. 38 C.F.R. § 3.326. These medical reports provide evidentiary information that speaks directly to the Veteran's subjective complaints as well as to the objective findings found on evaluation, and they represent the actual evaluation results of the Veteran's participation in those clinical studies. Barr v. Nicholson, 21 Vet. App. 303 (2007). A new VA examination is therefore not required and would only serve to further delay the Veteran's claim. 

The provisions of 38 C.F.R. § 3.103(c)(2) impose two distinct duties on VA employees, including Board personnel, in conducting hearings: the duty to explain fully the issues and the duty to suggest the submission of evidence that may have been overlooked. Bryant v. Shinseki, 23 Vet. App. 488 (2010). 

During the February 2012 hearing, the issue on appeal was identified. The undersigned asked the Veteran about his current VA treatment and what interactions he had with his family. The Board therefore concludes that it has fulfilled its duty under Bryant. 

Thus, there is no indication that there is any additional relevant evidence to be obtained by either VA or the Veteran. Therefore, the Board determines that VA has made reasonable efforts to the assist the Veteran in obtaining the evidence necessary to substantiate his claim for increase. 

Increased Rating Criteria

Disability evaluations are determined by evaluating the extent to which a veteran's service-connected disability adversely affects his ability to function under the ordinary conditions of daily life, including employment, by comparing his symptomatology with the criteria set forth in the Schedule for Rating Disabilities (Rating Schedule). 38 U.S.C.A. § 1155; 38 C.F.R. §§ 4.1, 4.2, 4.10.

In instances in which a veteran disagrees with the initial rating, the entire evidentiary record from the time of a veteran's claim for service connection to the present is of importance in determining the proper evaluation of disability, and staged ratings are to be considered in order to reflect the changing level of severity of a disability during this period. Fenderson v. West, 12 Vet. App. 119, 126 (1999). 

Staged ratings are appropriate for an increased rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. The relevant focus for adjudicating an increased rating claim is on the evidence concerning the state of the disability from the time period one year before the claim was filed until VA makes a final decision on the claim. Hart v. Mansfield, 21 Vet. App. 505 (2007).

Consideration is given to the potential application of the various provisions of 38 C.F.R. Parts 3 and 4, whether or not they are raised by a veteran, as required by Schafrath v. Derwinski, 1 Vet. App. 589 (1991).

If there is a question as to which of two evaluations should apply, the higher rating is assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating is assigned. 38 C.F.R. § 4.7.

In view of the number of atypical instances it is not expected, especially with the more fully described grades of disabilities, that all cases will show all the findings specified. Findings sufficiently characteristic to identify the disease and the disability therefrom, and above all, coordination of rating with impairment of function will, however, be expected in all instances. 38 C.F.R. § 4.21.

PTSD is evaluated under VA's General Rating Formula for Mental Disorders. Under the formula, a 30 percent rating is warranted when there is occupational and social impairment with occasional decrease in work efficiency and intermittent periods of an inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment and mild memory loss (such as forgetting names, directions, recent events). 38 C.F.R. § 4.130, 9411.

A 50 percent rating is warranted when there is occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment, impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships. Id.

A 70 percent rating is warranted where there is occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work like setting); inability to establish and maintain effective relationships. Id.

A 100 percent rating is warranted when there is total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication, persistent delusions or hallucinations, grossly inappropriate behavior, persistent danger of hurting self or others, intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene), disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. 38 C.F.R. § 4.130, 9411.

The list of symptoms under the rating criteria are meant to be examples of symptoms that would warrant the evaluation, but are not meant to be exhaustive, and the Board need not find all or even some of the symptoms to award a specific evaluation. Mauerhan v. Principi, 16 Vet App 436, 442-3 (2002). On the other hand, if the evidence shows that a veteran suffers symptoms or effects that cause occupational or social impairment equivalent to what would be caused by the symptoms listed in the diagnostic code, the appropriate equivalent rating will be assigned. Id. at 443. The Court of Appeals for the Federal Circuit has embraced the Mauerhan Court's interpretation of the criteria for rating psychiatric disabilities. Sellers v. Principi, 372 F.3d 1318, 1326 (Fed. Cir. 2004).

Ultimately in Mauerhan, the Court upheld the Board's decision noting that the Board had considered all of the Veteran's psychiatric symptoms, whether listed in the rating criteria or not, and had assigned a rating based on the level of occupational and social impairment. Mauerhan, supra at 444.

GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994) (DSM-IV).

A GAF of 61 to 70 reflects some mild symptoms, or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, with some meaningful interpersonal relationships. A GAF of 51 to 60 indicates moderate symptoms, or moderate difficulty in social, occupational, or school functioning. A GAF of 41 to 50 signifies serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). A GAF of 31 to 40 signifies some impairment in reality testing or communication, or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., where a depressed man avoids friends, neglects family, and is not able to work). DSM-IV; 38 C.F.R. §§ 4.125, 4.130. See Carpenter v. Brown, 8 Vet. App. 240, 242 (1995).

Although GAF are important in evaluating mental disorders, the Board must consider all the pertinent evidence of record and set forth a decision based on the totality of the evidence in accordance with all applicable legal criteria. Carpenter, supra. An assigned GAF, like an examiner's assessment of the severity of a condition, is not dispositive of the percentage rating issue; rather, it must be considered in light of the actual symptoms of a psychiatric disorder (which provide the primary basis for the rating assigned). See 38 C.F.R. § 4.126(a). Accordingly, an examiner's classification of the level of psychiatric impairment, by word or by a GAF, is to be considered but is not determinative of the percentage VA disability rating to be assigned; the percentage evaluation is to be based on all the evidence that bears on occupational and social impairment. Id.; see also 38 C.F.R. § 4.126, VAOPGCPREC 10-95, 60 Fed. Reg. 43186 (1995).

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the VA shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102.




The Claim for a higher rating for PTSD

Statements from the Veteran's daughters dated in July 2006 described his symptom that manifested while they were children.
 
A December 2006 VA treatment note indicated that the Veteran had presented to the mental health clinic for a diagnostic assessment. He reported nightmares two to three times per week, isolation, hypervigilence, intrusive thoughts, the avoidance of topics involving Vietnam and general anxiety. Flashbacks lasting four to 30 minutes and which were triggered by smelling gunpowder or fireworks were reported. He owned multiple firearms, carried a gun with him everywhere he went, slept with it nearby and had no permit for these weapons. He had suicidal ideations with thoughts of shooting himself but denied intent and stated the barrier was his family; he also reported an aborted suicide attempt with a gun one year ago. He resided with his wife of 37 years and his two grandchildren, over which he had custodial rights and power of attorney. For employment, he worked as a supervisor for a sanitation department and had been employed in that capacity for 16 years. Manic symptoms, psychotic symptoms and homicidal ideations were denied. Mental status examination found his affect to be dysthymic, tearful and congruent with his stated mood and with full range. Speech was of regular rate, rhythm and volume with intact prosody. He was adequately groomed and casually dressed. Judgment and insight were intact. Thought processes were logical, coherent and goal-directed with no loosening of associations. There were no auditory hallucinations, visual hallucinations or delusions. Diagnoses of PTSD, anxiety disorder not otherwise specified (NOS) and depression NOS were made and a GAF of 41 was assigned.

A March 2007 VA treatment note indicated that the Veteran's nightmares, thoughts of death and irritability had decreased while his sleep and mood had improved with new medication. There was no real improvement in symptoms of hypervigilance, avoidance, nightmares, isolation, agoraphobia, paranoia and some thoughts of death (chronic and vague with no plan or intent). Suicidal ideations, homicidal ideations, auditory hallucinations, visual hallucinations and delusions were denied. Mental status examination found him to be appropriately and neatly dressed/groomed, his mood "good" and his affect bright, with a full range and congruent. Thought processes were linear. A GAF score of 59 was assigned. The provider noted that the Veteran was still having feelings of being alone, isolating and carrying his gun daily with thoughts of paranoia. 

An August 2007 VA treatment note reflected the Veteran's reports of doing better after a medication change. He reported sleeping three to four hours per night on average and indicated that his avoidance, frequent daytime anxiety and paranoia had continued. There were some periods of depression when anxiety was at its worst. Mental status examination found his mood to be fair, his affect somewhat nervous and euthymic and his thought process linear. There were no suicidal ideations, homicidal ideations or psychosis.

A September 2007 VA treatment note reflected the Veteran's reports of nightmares, daytime anxiety, some depression at times and intermittent energy. He slept five to six hours per night, his interests were "intact" and his energy "comes and goes." Suicidal ideations and homicidal ideations were denied. He reported a history of carrying a gun with him due to his anxiety, feeling that he needed it for protection, and that he now normally kept it in his truck. He denied ever pulling a gun on anyone. Mental status examination found him to be casually dressed, his mood good, his affect euthymic with full range and his thought process linear. There were no suicidal ideations, homicidal ideations or psychosis. A GAF of 59 was assigned.

In an October 2008 notice of disagreement, the Veteran wrote that he had flashbacks and panic attacks, sometimes on a daily basis. These can occur more than one time a day. His long and short term memory were "bad" as he forgot to do things he was supposed to do and was unable to remember things that happened years ago. He puts off jobs at work and home "a lot" and sometimes these projects were never completed. He avoided others unless absolutely necessary and had no social relationships. He thought of his experiences in Vietnam every day and indicated that he must find a reason to keep living.

In a September 2009 substantive appeal, the Veteran wrote that he sometimes had panic attacks and flashbacks more than once a day. He forgets the names of relatives at times and has forgotten who he was and where he was. He avoided going where it was crowded and did not "go out anymore." He does not have any friends at all and had frequent thoughts of killing himself. He was unable to handle stressful situations.

A September 2009 VA treatment note reflected the Veteran's reports of nightmares, night sweats, depressed mood, passive suicidal ideation, social isolation, increased irritability, increased agitation, and poor sleep. He had attempted suicide in the 1980s when he put a gun to his head and pulled the trigger but the gun misfired. Anhedonia was endorsed but he still did things with his grandchildren and sometimes enjoyed activities. He had frequent passive suicidal ideation, including thoughts that he would be better off dead. Manic symptoms and homicidal ideations were denied. Mental status examination found his mood to be "bad," his affect constricted and congruent with his mood and his thought processes linear. There were no suicidal ideations, homicidal ideations, auditory hallucinations, or visual hallucinations with negative self talk about death on some days. The provider noted that the Veteran was neatly groomed and dressed and cooperative. A GAF of 41 was assigned. The provider noted that there were significant depressive symptoms in addition to PTSD and anxiety. He has had many years of poor sleep and had good insight into the negative impact insomnia had on his mood as well as the negative impact his PTSD manifestations had on his relationships with others. The provider strongly recommended that the guns be removed from the Veteran's home due to his past history of a suicide attempt and his recent passive suicide ideations.

An October 2009 VA treatment note reflected the Veteran's reports of hyper vigilance (including that he checked doors), and an exaggerated startle response. Active suicidal and homicidal ideations were denied but he admitted that he questioned "why [he should] go on living" daily. He also reported symptoms consistent with those reported in the past. Mental status examination found his affect to be slightly constricted and euthymic overall. Thought processes were linear. The provider noted that the Veteran was neatly groomed and dressed. A GAF of 45 was assigned.

A November 2009 VA treatment note indicated that the Veteran's affect was brighter than it was the last visit, with slight constriction and euthymic overall. Thought processes were linear and mood "varied." The Veteran also reported symptoms consistent with those reported in the past. A GAF of 48 was assigned. The provider noted that the Veteran had re-started his medication but still had significant symptoms related to nightmares and night sweats.

A January 2010 VA treatment note indicated that the Veteran's mood was better and that he was only depressed "once in a while." His motivation, energy, and concentration were improved. Chronic passive suicidal ideations remained. Nightmares and episodes of night sweats were less frequent. He self-isolated but socialized much more than in the past few months. Mental status examination found his affect to be bright with a normal range. A GAF of 51 was assigned. The provider noted that the Veteran's symptoms had diminished greatly which had enabled him to participate more in social activities and with his family.

An April 2010 VA psychological examination reflected the Veteran's reports that he was doing "pretty fair" and that some of his symptoms had improved since being placed on medication. He had been married to his wife for 41 years but reported that they were not very close and that he spent most of his time in his bedroom. He spent his time working his yard. He goes fishing with his grandson and did not do much socializing other than visiting his brother. He stopped working in February 2009 after being accused of stealing. Some suicidal ideation without intent was reported. Mental status examination found his mood to be generally euthymic, his affect appropriate to content and his speech within normal limits with regard to rate and rhythm. Thought processes and associations were logical and tight with no loosening of associations or confusion noted. Memory was grossly intact and he was fully oriented to all spheres. Insight and judgment were adequate. Hallucinations and homicidal ideations were denied and there was no delusional material noted. Following this examination and a review of the Veteran's claims file, a diagnosis of chronic PTSD was made and a GAF of 60 was assigned. The examiner opined that the Veteran's symptoms occurred several times per week and were mild. There was no evidence that his current unemployment were related to his PTSD symptoms. In addition, there was no evidence of impairment in thought processing or communications or that his symptoms preclude activities of daily living.

In a June 2010 statement, the Veteran wrote that his prescribed medication helped his symptoms. He had panic attacks at least three times per week and sometimes two or three times a day. He visited his elderly brother and enjoyed his grandchildren. He had no social relationships except for one friend who understood PTSD.

 A January 2011 VA treatment note reflected the Veteran's reports of a good night sleep with medication and that he was doing "very well." He also felt that his anxiety was under control with medication. He had been deer hunting with his grandson and felt "shaky" when the gun was fired but was able to tolerate his grandson shooting the deer. Suicidal and homicidal ideations were denied. A GAF of 58 was assigned.

An August 2011 VA treatment note indicated that the Veteran had been "doing very well" and that his current medication regimen was effective. He experienced panic attacks only occasionally, was able to function in public and stayed busy working in his wood and leather shop. He was able to sleep five to six hours per night without nightmares. Suicidal and homicidal ideations were denied. Mental status examination found his thought process to be linear and his thought content to be free of auditory and visual hallucinations. The provider noted that the Veteran had a very bright and pleasant affect. A GAF of 58 was assigned.

In a February 2012 hearing, the Veteran testified that his nightmares had gotten worse. He experienced what "they" called anxiety and what he called flashbacks. He was hypervigilant and carried a gun everywhere he went; he had a permit for the gun. He saw his VA psychiatrist approximately every three months. The medication had helped his symptoms in the past by "taking the edge off" but it did not fully resolve his symptoms. His daily activities consisted of woodworking, reloading ammunition and working on his home. He denied being a member of any service organizations or church groups. The only person that he saw was older brother who was ill. 

The Board finds that the Veteran's symptoms of PTSD most nearly approximated, at worst, the criteria associated with a 50 percent rating under the general formula for rating mental disorders. The clinical evidence reflects symptoms of anxiety, panic attacks, flashbacks, nightmares, sleep difficulties, an exaggerated startle response, paranoia, selective, isolation and the avoidance of socialization except for with immediate family members. The Veteran reported intermittent "energy" and stated that he sometimes put off or did not complete projects, suggesting disturbances of motivation. While he subjectively reported long and short term memory impairment, objective examination found his memory to be grossly intact. Judgment was consistently found to be intact and objective examination found no loosening of associations or confusion, suggesting that that there was no impairment in abstract thinking. Although the Veteran intermittently reported that he carried a firearm with him for protection, he also reported having a permit for the firearm and he denied ever brandishing it on anyone; there were also no episodes of violence noted or reported in the clinical evidence. In addition, the Veteran's assigned GAFs have ranged from 41 to 60, suggesting a range of mild to serious symptoms. See Carpenter, supra.

In addition, the Board has considered whether a rating in excess of 50 percent was warranted. The record shows that the Veteran has exhibited very few of the enumerated criteria warranting an assignment of the next higher (70 percent) rating. The Veteran's personal appearance was consistently noted to be neatly groomed and his speech was consistently found to be of regular rate, rhythm and volume. Thought processes were consistently found to be logical with no loosening of associations, hallucinations or delusions. He maintained a long-term marriage to his wife, reported "enjoying" his relationships with his grandchildren, and visited his elderly brother and reported having one friend. This all suggests that he was able to maintain effective relationships. There were no periods of violence noted nor was his impulse control found to be impaired. Although the Veteran reported that he checked the doors as part of his hypervigilance, there has been no suggestion that this or any other obsessive ritual interfered with his routine activities. Similarly, the record does not suggest that his reported panic was near-continuous or that it affected his ability to function independently, appropriately and effectively. Although the Veteran reported that he had lost his job in approximately February 2009, his unemployment was the result of him being accused of stealing rather than his PTSD symptoms. There is no evidence that the Veteran attempted schooling during the course of the appeal.

The only psychiatric manifestation that is both enumerated in the criteria for an even higher rating, and documented in the clinical evidence, is intermittent suicidal ideations without active ideation or intent. While the Veteran reported such ideations on occasion, as reflected in the December 2006 VA treatment note, he subsequently denied such ideations. See the March 2007 and August 2007 VA treatment notes. Hence, the Veteran has given conflicting information about this manifestation and as such it is not firmly established. Moreover, this manifestation in and of itself, when viewed in the context of the comprehensive disability picture as presented during the appellate period, does not support a higher rating. A rating in excess of 50 percent is therefore not warranted. 38 C.F.R. § 4.130, 9411.

Extra-schedular Consideration

Pursuant to § 3.321(b)(1), the Under Secretary for Benefits or the Director, Compensation and Pension Service, is authorized to approve an extra-schedular evaluation if the case "presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards." 38 C.F.R. § 3.321(1)(b). 

The question of an extra-schedular rating is a component of a claim for an increased rating. See Bagwell v. Brown, 9 Vet. App. 337, 339 (1996). Although the Board may not assign an extra-schedular rating in the first instance, it must specifically adjudicate whether to refer a case for extra-schedular consideration when the issue either is raised by the claimant or is reasonably raised by the evidence of record. Barringer v. Peake, 22 Vet. App. 242 (2008).

If the evidence raises the question of entitlement to an extra-schedular rating, the threshold factor for extra-schedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Therefore, initially, there must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability. Thun v. Peake, 22 Vet. App. 111 (2008).

Under the approach prescribed by VA, if the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the Rating Schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required. In the second step of the inquiry, however, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, the RO or Board must determine whether the claimant's exceptional disability picture exhibits other related factors such as those provided by the regulation as "governing norms." 38 C.F.R. 3.321(b)(1) (related factors include "marked interference with employment" and "frequent periods of hospitalization"). When the Rating Schedule is inadequate to evaluate a claimant's disability picture and that picture has related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for completion of the third step--a determination of whether, to accord justice, the claimant's disability picture requires the assignment of an extra-schedular rating. Id. 

The Veteran's PTSD manifested as anxiety, panic attacks, flashbacks, nightmares, sleep difficulties, an exaggerated startle response, paranoia, selective isolation and the avoidance of socialization except for with immediate family members. These factors are contemplated by the rating criteria. There have been no reported factors outside the rating schedule. The Veteran has not alleged (and the evidence has not shown) marked interference with employment as he has not alleged missing work due to his PTSD when he was employed prior to February 2009. He was not employed after February 2009 and therefore could not demonstrate interference with employment. Hence, referral for consideration of an extra-schedular rating is not warranted. 

The CVAC has held that a total disability rating based on individual unemployability due to service connected disabilities (TDIU) is an element of all appeals of an initial rating. Rice v. Shinseki, 22 Vet. App. 447 (2009). TDIU is granted where a veteran's service connected disabilities are rated less than total, but they prevent him from obtaining or maintaining all gainful employment for which his education and occupational experience would otherwise qualify him. 38 C.F.R. § 4.16. 

A May 2009 SSA application indicated that the Veteran worked full-time as a mechanical/truck driver supervisor prior to February 17, 2009. Consideration of TDIU, under 38 C.F.R. § 4.16(a)-(b), is therefore not warranted prior to February 17, 2009. See Jackson v. Shinseki, 587 F.3d 1106 (Fed. Cir. 2009) (TDIU is a part of an increased rating or initial rating only when there is evidence of unemployability). 

In an April 2010 VA examination, the Veteran reported that he stopped working in February 2009 after being falsely accused of stealing. The Veteran was granted SSA benefits in May 2009 due to chronic obstructive pulmonary disease and chronic ischemic heart disease. As such, the evidence of record does not support a finding that the Veteran is unable to work due solely to his service-connected PTSD; consideration of TDIU is therefore not warranted.

[Continued on following page.]

ORDER

Entitlement to an initial rating of 50 percent (and no higher) for PTSD is granted, subject to the governing laws and regulations applicable to the payment of monetary benefits



____________________________________________
DENNIS F. CHIAPPETTA
Veterans Law Judge, Board of Veterans' Appeals





Department of Veterans Affairs