Citation Nr: 1229616 
Decision Date: 08/28/12 Archive Date: 09/05/12

DOCKET NO. 10-20 650 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO) in Louisville, Kentucky


THE ISSUES

1. Entitlement to an increased rating for left knee degenerative joint disease and meniscus tear, currently evaluated as 10 percent disabling.

2. Entitlement to an increased rating for left ankle arthritis, currently evaluated as 10 percent disabling.


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESSES AT HEARING ON APPEAL

The Veteran and C.W.



ATTORNEY FOR THE BOARD

Suzie S. Gaston, Counsel


INTRODUCTION

The Veteran served on active duty from February 1986 to September 1988; he had 7 years, 11 months and 18 days of active service prior to February 12, 1986, which included a period from November 1977 to November 1981. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a September 2009 rating decision, by the Louisville, Kentucky, Regional Office (RO), which denied the Veteran's claims of entitlement to a rating in excess of 10 percent for left knee degenerative joint disease and meniscus tear, and a rating in excess of 10 percent for left ankle arthritis. He perfected a timely appeal to that decision. 

On April 3, 2012, the Veteran and a friend appeared and testified at a hearing before the undersigned Veterans Law Judge, sitting at the RO. A transcript of the hearing is of record. At that hearing, additional evidence was submitted to the Board by the Veteran along with a waiver of initial review of this evidence by the RO. See 38 C.F.R. § 20.1304 (c) (2011). 

(The issue of entitlement to a rating in excess of 10 percent for left ankle arthritis is addressed in the remand that follows the decision below.) 


FINDING OF FACT

The Veteran's service-connected degenerative joint disease of the left knee has been manifested by subjective complaints of pain and instability, and objective clinical findings of crepitus, tenderness and x-ray findings of arthritis. The Veteran has flexion to 90 degrees and extension to 0 degrees; there are no medical findings of fatigue, weakness, lack of endurance, subluxation or instability. 


CONCLUSION OF LAW

The criteria for a rating in excess of 10 percent for left knee degenerative joint disease with meniscus tear have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2002 & Supp. 2011); 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.1, 4.2, 4.3, 4.7, 4.10, 4.71a, Diagnostic Codes 5003, 5260 (2011). 


REASONS AND BASES FOR FINDING AND CONCLUSION

I. Duty to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) enhanced VA's duty to notify and assist claimants in substantiating their claims for VA benefits, as codified in pertinent part at 38 U.S.C.A. §§ 5103, 5103A (West 2002 & Supp. 2011); 38 C.F.R. §§ 3.159, 3.326(a) (2011). 

Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant of the information and evidence not of record that is necessary to substantiate the claim; and to indicate which information and evidence VA will obtain and which information and evidence the claimant is expected to provide. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b). The United States Court of Appeals for Veterans Claims has held that VCAA notice should be provided to a claimant before the initial RO decision on a claim. Pelegrini v. Principi, 18 Vet. App. 112 (2004). However, if VCAA notice is provided after the initial decision, such a timing error can be cured by subsequent readjudication of the claim, as in a statement of the case (SOC) or supplemental SOC (SSOC). Mayfield v. Nicholson, 20 Vet. App. 537, 543(2006); Prickett v. Nicholson, 20 Vet. App. 370, 376 (2006). 

In this case, VA satisfied its duty to notify by means of letters dated in December 2008 and September 2009 from the RO to the Veteran that were issued prior to the RO decision in September 2009. An additional letter was issued in August 2010. Those letters informed the Veteran of what evidence was required to substantiate the claim and of his and VA's respective duties for obtaining evidence. Accordingly, the requirements the Court set out in Pelegrini have been satisfied. 

The Board finds that the content of the above-noted letters provided to the Veteran complied with the requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) regarding VA's duty to notify. 

Regarding the duty to assist, the Veteran was provided an opportunity to submit additional evidence. It also appears that all obtainable evidence identified by the Veteran relative to the claim decided herein has been obtained and associated with the claims file, and that neither he nor his representative has identified any other pertinent evidence not already of record that would need to be obtained for a proper disposition of this claim. It is therefore the Board's conclusion that the Veteran has been provided with every opportunity to submit evidence and argument in support of his claim, and to respond to VA notice. 

The Veteran has been afforded VA examinations on the issue decided herein. McLendon v. Nicholson, 20 Vet. App. 79 (2006). The examinations were conducted by medical professionals who reviewed the medical records, solicited history from the Veteran, and provided information necessary to apply the pertinent rating criteria and to decide the rating issue addressed in this decision. Nieves-Rodriguez v. Peake, 22 Vet. App 295 (2008). 

Accordingly, the Board finds that VA has satisfied its duty to notify and assist the Veteran in apprising him as to the evidence needed, and in obtaining evidence under the duty-to-assist requirements. Therefore, no useful purpose would be served in remanding these matters for yet more development. Such a remand would result in unnecessarily imposing additional burdens on VA, with no additional benefit flowing to the Veteran. The Court has held that such remands are to be avoided. Sabonis v. Brown, 6 Vet. App. 426, 430 (1994). 


II. Background

By a rating action in May 2007, the RO granted service connection for left knee degenerative joint disease and meniscus tear, associated with degenerative joint disease of the right knee; a 10 percent disability rating was assigned, effective August 18, 2006. Subsequently, in September 2007, the RO granted service connection for left ankle arthritis and assigned a 10 percent disability rating, effective February 4, 1997. 

The Veteran's claim for an increased rating for left knee and left ankle disabilities (VA Form 21-4138) was received in December 2008. Submitted in support of the claim were medical records, VA as well as private treatment reports, dated from January to December 2008. These records show that the Veteran continued to receive follow-up evaluation and treatment for chronic left knee pain. During a clinical visit in January 2008, it was noted that the left knee pain was unresponsive to conservative treatment; it was also noted that the Veteran had tried non-steroidal anti-inflammatory drugs without significant relief. It was also reported that the Veteran suffered from activity-related pain which interfered with activities of daily living. The Veteran was seen on January 14, 2008 for an injection in the left knee. He subsequently received weekly injections of Hyalgan in the left knee. 

Received in September 2009 were VA progress notes dated from December 2008 to September 2009. These records show that the Veteran received ongoing clinical attention and treatment for his left knee disorder, which included monthly knee injections. 

The Veteran was afforded another VA examination in September 2009. The Veteran indicated that his left knee was unstable; as a result, he wore a left knee brace on a daily basis. The Veteran reported getting left knee Hyalgan injections, with his last one being in July 2009; he noted that they had been helpful. The Veteran stated that he applies topical rubbing alcohol to his knees daily; response to treatment was reported as fair. The Veteran reported pain, giving way, instability, stiffness, weakness and incoordination in the left knee. No episodes of dislocation or subluxation were noted. The Veteran also reported daily flare-ups which last hours. He noted that left knee pain is brought on by prolonged standing, and is relieved with sitting down or laying down. It was noted that the Veteran has decreased ability to walk or stand with severe left knee pain. 

On examination, the examiner described the Veteran's gait as normal. The left knee had crepitus and guarding of movement; there was also some grinding in the left knee. No instability, locking, effusion, or dislocation was noted. Range of motion in the left knee was from 0 degrees to 125 degrees. The Veteran noted objective evidence of pain with active motion of the left knee; however, the examiner noted that there was no loss of motion upon repeated movement testing. X-ray study of the left knee revealed degenerative changes with narrowing of the medial joint compartment and also an old unfused fragment of the anterior tibial tubercle unchanged from November 6, 2007. The pertinent diagnosis was left knee degenerative joint disease and meniscus tear, with previous partial meniscectomy. It was noted that the Veteran was employed full time as a United States Postal Service Processor; he reported losing 4 weeks during the last 12-month period as a result of his knees and left ankle. It was noted that the Veteran had to take more frequent work breaks due to his left ankle and left knee. 

Subsequently received were VA progress notes dated from October 2009 through December 2010. These records show that the Veteran received ongoing clinical attention and treatment for his left knee disorder. 

The Veteran was afforded another VA examination in August 2010. At that time, he reported that the left knee had been giving away and causing pain. The Veteran indicated that he had surgery on the left knee 2 years earlier and subsequently developed arthritis in that knee. It was noted that he was currently receiving injections in the left knee and wore a brace. The Veteran reported pain, stiffness, and swelling in the left knee; he also reported giving away of the left knee. The Veteran reported flare-ups weekly lasting 1 to 2 days; he stated that precipitating factors included walking, prolonged standing, kneeling and bending the knee. He noted that the pain is relieved by rest and Tens unit. The Veteran stated that his balance is off with a flare-up; he indicated that he had to hold on to things so that he can do his job. He had a hard time doing his job but he goes to work. He uses a can and brace intermittently. On examination, it was noted that the Veteran's gait was antalgic. He had crepitus, effusion and tenderness in the left knee. There was also some grinding in the left knee. He had no instability, no locking, and no dislocation. McMurray's test was positive. No weakness was noted. Range of motion in the left knee was from 0 degrees to 90 degrees. There was objective evidence of pain following repetitive motion; however, there were no additional limitations after three repetitions of range of motion. No ankylosis was noted. X-ray study of the left knee revealed mild degenerative changes of the left knee with no acute abnormality. The pertinent diagnosis was left knee degenerative joint disease with meniscus tear. It was noted that the Veteran works full time, but with decreased mobility and problems with lifting and carrying. 

At his personal hearing in April 2012, the Veteran reported ongoing problems with his left knee; he described instability, swelling and soreness in the left knee. The Veteran indicated that he gets shots every six months that work for one or two days. The Veteran related that the left knee pain is aggravated by rain and damp weather. The Veteran stated that he has been issued a knee brace; however, he noted that the brace seems to make things worse as it causes the left ankle to be out of whack. The Veteran testified that the swelling sometimes makes walking very difficult; it swells so bad that it makes him cry. The Veteran related that he would rate the knee pain a 10. The Veteran maintained that his work was being affected by his left knee because he is required to have a 15 minute break every 2 hours. He stated that he experiences giving away of the knee pretty often and he has been told that he will need a knee replacement because there is no cartilage in the joint. 

III. Analysis

Disability evaluations are determined by comparing a Veteran's present symptomatology with criteria set forth in VA's Schedule for Rating Disabilities, which is based on average impairment in earning capacity. See 38 U.S.C.A. § 1155 (West 2002 & Supp. 2011); 38 C.F.R. Part 4 (2011). 38 C.F.R. § 4.1 requires that each disability be viewed in relation to its history, and that there be emphasis upon the limitation of activity imposed by the disabling condition. The provisions of 38 C.F.R. § 4.2 require that medical reports be interpreted in light of the entire recorded history, and that each disability must be considered from the point of view of the Veteran's working or seeking work. Separate diagnostic codes identify the various disabilities. Where there is a question as to which of two disability evaluations shall be applied, the higher evaluation is to be assigned if the disability picture more nearly approximates the criteria required for that rating. 38 C.F.R. § 4.7. Otherwise, the lower rating is to be assigned. 

The requirements for evaluation of the complete medical history of the claimant's condition operate to protect claimants against adverse decisions based upon a single, incomplete, or inaccurate report and to enable VA to make a more precise evaluation of the level of the disability and of any changes in the condition. Schafrath v. Derwinski, 1 Vet. App. 589 (1991). Moreover, VA has a duty to acknowledge and consider all regulations which are potentially applicable through the assertions and issues raised in the record, and to explain the reasons and bases for its conclusions. Where entitlement to compensation has already been established and an increase in the disability rating is at issue, the present level of disability is of primary concern. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). In this case, the Board has concluded that varied evaluations are not warranted over the course of the claim period in question. 

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in the parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination, and endurance. It is essential that the examination on which ratings are based adequately portray the anatomical damage, and the functional loss, with respect to all these elements. The functional loss may be due to absence of part, or all, of the necessary bones, joints and muscles, or associated structures, or to deformity, adhesions, defective innervation, or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by visible behavior of the claimant undertaking the motion. Weakness is as important as limitation of motion, and a part which becomes painful on use must be regarded as seriously disabled. 38 C.F.R. §§ 4.10, 4.40, 4.45. 

The United States Court of Appeals for Veterans Claims (Court) has held that VA must analyze the evidence of pain, weakened movement, excess fatigability, or incoordination and determine the level of associated functional loss in light of 38 C.F.R. § 4.40, which requires the VA to regard as "seriously disabled" any part of the musculoskeletal system that becomes painful on use. DeLuca v. Brown, 8 Vet. App. 202 (1995). The provisions of 38 C.F.R. § 4.14 (avoidance of pyramiding) did not forbid consideration of a higher rating based on greater limitation of motion due to pain on use, including during flare-ups. The Board notes that the guidance provided by the Court in DeLuca must be followed in adjudicating claims where a rating under the diagnostic codes governing limitation of motion should be considered. However, the Board also notes that the provisions of 38 C.F.R. § 4.40 and 38 C.F.R. § 4.45, should only be considered in conjunction with the Diagnostic Codes predicated on limitation of motion. Johnson v. Brown, 9 Vet. App. 7 (1996). 

The Board notes that the intent of the rating schedule is to recognize painful motion with joint or periarticular pathology as productive of disability. It is the intention to recognize actually painful, unstable, or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint. 38 C.F.R. § 4.59. 

After the evidence has been assembled, it is the Board's responsibility to evaluate the entire record. 38 U.S.C.A. § 7104(a). When there is an approximate balance of evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. §§ 3.102, 4.3. In Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990), the Court stated that "a Veteran need only demonstrate that there is an 'approximate balance of positive and negative evidence' in order to prevail." To deny a claim on its merits, the preponderance of the evidence must be against the claim. Alemany v. Brown, 9 Vet. App. 518, 519 (1996), citing Gilbert at 54. 

The Veteran was granted service connection for degenerative joint disease of the left knee secondary to his service-connected right knee disability. The disability is currently evaluated as 10 percent disabling for painful motion associated with arthritis. See 38 C.F.R. § 4.71a (Diagnostic Code 5003). The Veteran seeks a higher rating. For the reasons explained below, the Board finds that a rating in excess of 10 percent disabling is not warranted. 

Normal range of motion of the knee is to 0 degrees extension and to 140 degrees flexion. 38 C.F.R. § 4.71a, Plate II (2011). 

In VAOGPREC 9-2004 (September 17, 2004) it was held that despite motion being in one plane, the two motions, flexion (a retrograde motion) in bending the leg and extension (a forward motion) in straightening the leg, serve different functional roles, although both are necessary for normal function, such that they constitute two symptomatologies or manifestations that are not duplicative or overlapping such that separate ratings may be assigned for limitation of knee flexion (DC 5260) and for limitation of knee extension (DC 5261) without violation of the rule against pyramiding, see 38 C.F.R. § 4.14, regardless of whether the limited motions are from the same or different causes. 

Limitation of flexion of a leg warrants a noncompensable evaluation if flexion is limited to 60 degrees, a 10 percent evaluation if flexion is limited to 45 degrees, a 20 percent evaluation if flexion is limited to 30 degrees, or a 30 percent evaluation if flexion is limited to 15 degrees. 38 C.F.R. § 4.71a, DC 5260. 

Limitation of extension of a leg warrants a noncompensable evaluation if extension is limited to 5 degrees, a 10 percent evaluation if extension is limited to 10 degrees, a 20 percent evaluation if extension is limited to 15 degrees, a 30 percent evaluation if extension is limited to 20 degrees, a 40 percent evaluation if extension is limited to 30 degrees, or a 50 percent evaluation if extension is limited to 45 degrees. 38 C.F.R. § 4.71a, DC 5261. 

Where there is other impairment of the knee, including recurrent subluxation or lateral instability, a 10 percent rating may be assigned where the resulting disability is slight. A 20 percent evaluation will be assigned for moderate disability, and 30 percent for severe disability. 38 C.F.R. § 4.71a, DC 5257. (VA's Office of General Counsel has determined a claimant may receive separate disability ratings for limitation of motion and instability of the knee, respectively. See VAOPGCPREC 23-97 (July 1, 1997; revised July 24, 1997). 

Based on the evidence of record, the Board finds that an increased evaluation for left knee degenerative joint disease with meniscus tear is not warranted. The 10 percent rating contemplates the presence of periarticular pathology productive of pain with full motion in the left knee. The evaluation would also contemplate the functional equivalent of limitation of flexion to 45 degrees. As indicated above, in order to warrant a higher evaluation of 20 percent, the Veteran's left knee would have to demonstrate actual limitation of flexion or the functional equivalent of limitation of flexion to 30 degrees. However, nothing in the lay or medical evidence reflects functional limitation of flexion to 30 degrees. Significantly, the medical evidence demonstrates that on the occasion of the VA examination in September 2009, active range of motion in the left knee was from 0 degrees of extension to 125 degrees of flexion. In August 2010, range of motion was reported to be from 0 degrees of extension to 90 degrees of flexion. As such, the lay and medical evidence establish that the remaining functional use is greater than 30 degrees of flexion. Therefore, the Board finds that an increased evaluation based on functional limitation of flexion is not warranted. 

The Board has considered whether a higher rating may be assigned on the basis of functional loss due to pain under 38 C.F.R. § 4.40 and functional loss due to weakness, fatigability, incoordination, lack of endurance or pain on movement of a joint under 38 C.F.R. § 4.45. See DeLuca, supra. As noted above, during the September 2009 VA examination, while the examiner noted objective evidence of painful motion, there was no additional loss of motion on repetitive use. Similarly, in August 2010, while the examiner noted objective evidence of pain with active motion on the left side, there were no additional limitations with consideration of painful motion after repetitive testing. The Board accepts that the Veteran has functional impairment, pain, and pain on motion. See DeLuca. However, neither the lay nor medical evidence reflects the functional equivalent of the criteria required for a higher evaluation. See Johnston v. Brown, 10 Vet. App. 80 (1997). Rather, the probative evidence, including lay evidence, establishes that the Veteran retains functional use of flexion better than 45 degrees. As such, the Board finds that the assignment of additional disability pursuant to 38 C.F.R. §§ 4.40 and 4.45 is not warranted. 

As noted above, a knee disability may be also rated under the criteria for limitation of extension and recurrent subluxation or lateral instability, in addition to limitation of flexion. The evidence of record consistently shows that the Veteran was able to extend his left knee to 0 degrees. Furthermore, the evidence shows that his left knee extension was not functionally limited by pain, fatigue, repetition, incoordination, or lack of endurance. Therefore, a separate, compensable evaluation is not warranted under Diagnostic Code 5261. 

The Board further notes that there have been no findings of laxity or instability of the left knee. More recently, during the VA examination in August 2010, the Veteran reported some recurrent swelling and sensation of giving away during activities; however, on examination, the examiner specifically stated that there was no instability noted. Therefore, the Board finds that a separate evaluation under Diagnostic Code 5257 for recurrent subluxation or lateral instability is not warranted. 

The Board notes that it has considered the Veteran's lay reports at the hearing of experiencing instability in his left knee. Certainly, the Veteran is competent to report experiencing symptoms capable of lay observation, such as pain. See Charles v. Principi, 16 Vet. App. 370 (2002). However, with respect to his assertions of recurring instability, the Board ultimately places more probative weight on the consistent clinical findings of two competent health care specialists than on the Veteran's lay descriptions. Therefore, the Board finds that the preponderance of the evidence is against assigning a separate rating under Diagnostic Code 5257 for instability. 

The Board notes that the Veteran is competent to report that his disability is worse. However, the more probative evidence consists of that prepared by neutral skilled professionals, and such evidence demonstrates that an evaluation in excess of 10 percent for the left knee degenerative joint disease and meniscal tear is not for application. Accordingly, for the reasons provided above, the Board finds that the preponderance of the evidence is against the Veteran's claim for a rating in excess of 10 percent for left knee degenerative joint disease and meniscal tear. 38 U.S.C.A § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56(1990). 

The Board has also considered whether the Veteran's left knee degenerative joint disease and meniscus tear warrants referral for extraschedular consideration. To accord justice in an exceptional case where the scheduler standards are found to be inadequate, the field station is authorized to refer the case to the Chief Benefits Director or the Director, Compensation and Pension Service for assignment of an extraschedular evaluation commensurate with the average earning capacity impairment. 38 C.F.R. § 3.321(b) (1) (2011). 

The criterion for such an award is a finding that the case presents an exceptional or unusual disability picture with related factors as marked interference with employment or frequent periods of hospitalization as to render impractical application of regular schedular standards. The Court has held that the Board is precluded by regulation from assigning an extraschedular rating under 38 C.F.R. § 3.321(b) (1) in the first instance; however, the Board is not precluded from raising this question, and in fact is obligated to liberally read all documents and oral testimony of record and identify all potential theories of entitlement to a benefit under the law and regulations. Floyd v. Brown, 9 Vet. App. 88 (1996). The Court further held that the Board must address referral under 38 C.F.R. § 3.321(b) (1) only where circumstances are presented which the Director of VA's Compensation and Pension Service might consider exceptional or unusual. Shipwash v. Brown, 8 Vet. App. 218, 227 (1995). 

The Court has clarified the analytical steps necessary to determine whether referral for extraschedular consideration is warranted. See Thun v. Peake, 22 Vet. App. 111 (2008). The Court stated that the RO or the Board must first determine whether the schedular rating criteria reasonably describe the Veteran's disability level and symptomatology. Id. at 115. If the schedular rating criteria do reasonably describe the Veteran's disability level and symptomatology, the assigned schedular evaluation is adequate, referral for extraschedular consideration is not required, and the analysis stops. Id. 

If the RO or the Board finds that the schedular evaluation does not contemplate the Veteran's level of disability and symptomatology, then either the RO or the Board must determine whether the veteran's exceptional disability picture includes other related factors such as marked interference with employment and frequent periods of hospitalization. Id. at 116. If this is the case, then the RO or the Board must refer the matter to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for the third step of the analysis, determining whether justice requires assignment of an extraschedular rating. Id. 

Here, the Veteran's reported symptoms, including pain and stiffness are all adequately addressed by the schedule of ratings. There are no manifestations of the Veteran's left knee disability that have not contemplated by the rating schedule. Therefore, no referral for extraschedular consideration is required and no further analysis is in order. 

For the reasons provided above, the preponderance of evidence is against the Veteran's claim for a disability rating in excess of 10 percent for left knee degenerative joint disease and meniscus tear. As the preponderance of the evidence is against the claim, the benefit-of-the-doubt rule is not applicable. See 38 U.S.C.A. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49, 54-56 (1990). 


ORDER

An increased rating for left knee degenerative joint disease and meniscus tear is denied. 



REMAND

As noted above, the VCAA requires that VA must provide notice that informs the claimant (1) of the information and evidence not of record that is necessary to substantiate the claim, (2) of the information and evidence that VA will seek to provide, and (3) of the information and evidence that the claimant is expected to provide. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b) (1). 

After examining the record, the Board concludes that further assistance to the Veteran is required in order to comply with the duty to assist as mandated by 38 U.S.C.A. § 5103A. 

The Veteran essentially contends that his left ankle disorder is more disabling than reflected by the 10 percent disability rating currently assigned. The Veteran maintains that his left ankle disorder continues to deteriorate; he stated that he is severely limited in his activities and his ability to work due to the left ankle pain. 

At his personal hearing in April 2012, the Veteran testified that the left ankle has become dislocated; his doctor has told him that he will need replacement of the left ankle because of the state of the cartilage and arthritis around the joint. The Veteran stated that the left ankle hurts all the time; he stated that his job requires him to stand all day and that causes increased damage to the joint at the end of the week. The Veteran indicated that he loses approximately 4 to 5 days of work each month as a result of ankle pain. The Veteran testified that his doctors have indicated that he needs to have surgery; otherwise, he may develop gangrene and lose the entire leg. At the hearing, the Veteran reported that he was scheduled to undergo surgery on his left ankle at St. Mary and Elizabeth hospital in May 2012. He alleged that the August 2010 VA examination did not accurately reflect the severity of his left ankle disability. 

Because the Veteran testified that he would be having surgery for his service-connected left ankle disability, the surgical report and any outstanding treatment records should be obtained and associated with the claims file. Furthermore, as noted above, the Veteran was last afforded a VA examination regarding his service-connected left ankle disability in August 2010. Because the Veteran likely has undergone surgery, the Board is of the opinion that a current VA examination is required in order to fully assess the current status of the Veteran's left ankle disability. Caffrey v. Brown, 6 Vet. App. 377 (1994). 

To ensure that VA has met its duty to assist the claimant in developing the facts pertinent to his claim and to ensure full compliance with due process requirements, the case is REMANDED to the agency of original jurisdiction (AOJ) for the following actions: 

1. Contact the Veteran and request that he identify the names, addresses, and approximate dates of treatment for all VA and non-VA health care providers who have treated him for his left ankle disability since August 2010. After securing the necessary releases, the AOJ should specifically request from St. Mary and Elizabeth Hospital in Louisville, Kentucky, the report of any surgery performed on the Veteran's left ankle in May 2012. All attempts to procure records should be documented in the file. If the AOJ cannot obtain records identified by the Veteran, a notation to that effect should be inserted in the file. The Veteran and his representative are to be notified of unsuccessful efforts in this regard in order to allow the Veteran the opportunity to obtain and submit those records for VA review. 

2. Thereafter, the Veteran should be afforded a VA examination in order to determine the current severity of the service-connected left ankle disorder. The claims file must be made available to and reviewed by the examiner prior to the requested examination. Any and all indicated evaluations, studies, and tests deemed necessary by the examiner should be accomplished and any such results must be included in the examination report. If the May 2012 surgery was for service-connected disability, post-operative symptoms should be described in detail. Range-of-motion studies must be conducted and all functional losses should be identified, such as pain on use, weakness, incoordination, fatigability, etc. Functional loss should be specifically equated with "moderate," or "marked" limitation of motion. The examiner should express such functional loss in terms of additional degrees of limitation of motion (beyond that clinically shown). Finally, the examiner should provide an opinion as to the degree to which the Veteran's disorder interferes with his ability to secure and follow substantially gainful employment, with specific references to any tasks or activities precluded by the disability. The examiner should set forth a complete rationale for the opinions expressed in the clinical report. 

3. The AOJ should review the claims file to ensure that the requested development has been completed. In particular, the RO should review the requested examination report to ensure that it is responsive to and in complete compliance with the directives of this remand, and if it is not, the RO should take corrective action. See Stegall v. West, 11 Vet. App. 268 (1998). 

4. Thereafter, the AOJ should readjudicate the Veteran's claim in light of the additional evidence obtained. If any benefit sought on appeal remains denied, the Veteran and his representative should be furnished a SSOC, which includes a summary of additional evidence submitted, and any additional applicable laws and regulations. The SSOC must provide reasons and bases for the decision reached. Thereafter, the Veteran and his representative should be given the opportunity to respond. 

After the above actions have been accomplished, the case should be returned to the Board for further appellate consideration, if otherwise in order. By this remand the Board intimates no opinion, either factual or legal, as to the ultimate determination warranted in this case. The purposes of the remand are to further develop the record and to afford the Veteran due process of law. No action is required of the Veteran until he receives further notice. 

The appellant has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). 

This case must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2011). 



_________________________________
MARK F. HALSEY
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs