**Thomas A. CAFFREY, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 90–1511.**

United States Court of Veterans Appeals.

March 31, 1994.

Thomas A. Caffrey, pro se.

James A. Endicott, Jr., Gen. Counsel, David T. Landers, Acting Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, and Michael P. Butler, Washington, DC, were on the pleadings, for the appellee.

Before KRAMER, MANKIN, and STEINBERG, Judges.

MANKIN, Judge, filed the opinion of the Court, in which KRAMER, Judge, joined, concurring.

STEINBERG, Judge, filed an opinion concurring in part and dissenting in part.

MANKIN, Judge:

Thomas A. Caffrey (appellant) appeals an October 9, 1990, decision of the Board of Veterans' Appeals (BVA or Board) denying entitlement to an increased rating and an earlier effective date for chronic undifferentiated schizophrenia, currently rated at 50% disabling. The appellant claims that the BVA erred in determining that the severity of his condition had not increased, and that the Board failed to address his entitlement to a higher rating due to individual unemployability. The appellant further contends that the Board erred in determining that he was not entitled to an earlier effective date for service connection, because prior determinations were the result of clear and unmistakable error (CUE), based upon the VA's failure to obtain private medical records requested by the appellant.

The Court finds that because the Board failed to conduct a contemporaneous examination of the appellant and assess evidence presented by him, it did not appropriately determine whether the appellant's condition had become more severe. Further, although the appellant raised the issue of entitlement to an increased rating due to individual unemployability, the Board failed to address that claim. Last, while the appellant has raised the issue of CUE in prior determinations, the issue is not applicable here because CUE claims cannot be based upon a failure in the duty to assist. Accordingly, the Court vacates in part and affirms in part the Board's October 9, 1990 decision, and remands the matter in part.

## I. Factual Background

The appellant served in the United States Army from November 24, 1958 to February 15, 1962. In March 1964, he submitted an application for compensation or pension seek-

ing service connection for a psychiatric disorder. The Regional Office (RO) apparently denied the appellant's claim in a decision dated June 5, 1964. That determination became final as a result of the appellant's failure to file an appeal within one year of the decision.

The appellant attempted to reopen his claim on June 3, 1975, and referred to treatment he had undergone at the Institute, Pennsylvania Hospital [hereinafter Institute], in March 1962. Evidence of that treatment was not submitted by the appellant and his claim was denied on August 8, 1975. The appellant again attempted to reopen his claim for service connection in December 1977 and May 1978. The RO denied his claim, and informed the appellant that new and material evidence was required to reopen a previous and finally disallowed claim. In June 1979 the appellant again attempted to reopen his claim, but again reopening was denied due to the lack of new and material evidence.

On March 24, 1988, the appellant reopened his claim, and in an August 22, 1988, letter asserted that a "crucial" report of hospitalization at the Institute for the period from February 27, 1962, to May 31, 1962, was not in his VA files. The appellant stated that he had authorized the hospital to send the report to the VA, and that the report proved the appellant was admitted one week after his discharge from service. On October 11, 1988, the RO found that the report and the other evidence of record established a new factual basis warranting a grant of service connection for chronic undifferentiated schizophrenia. The RO assigned a 10% rating, effective March 24, 1988, and ordered an examination to determine the current severity of the appellant's condition.

The examination was conducted on November 28, 1988, by George Anghel, M.D. Dr. Anghel noted that the appellant last worked in 1975 with the exception of a part-time job for one month in 1985. The doctor found that reasoning and judgment were not grossly impaired and attention, orientation, memory, and intelligence were normal. He further found the appellant's social and industrial impairment to be "moderately severe."

Based upon this medical examination, the RO issued a decision on January 9, 1989, increasing the rating for chronic undifferentiated schizophrenia to 50% disabling, with an effective date of March 24, 1988.

In August 1989 the appellant filed a Notice of Disagreement (NOD) with the January 1989 RO decision, stating that his disability was 100% disabling and that his award should have an effective date prior to April 1, 1988. In his NOD, the appellant stated that an earlier effective date was warranted because he had informed the VA about his hospitalization at the Institute, and that he did not discover until sometime in 1988 that the medical records had not been forwarded. The appellant also claimed entitlement to an increased rating due to the severity of his condition and individual unemployability. With the appellant's substantive appeal to the BVA in October 1989, he submitted a September 1989 letter from William Woodworth, the appellant's rehabilitation counselor from July 1987 to January 1988. Mr. Woodworth stated that the appellant was then substantially industrially impaired and unable to function vocationally. Mr. Woodworth also stated that although counseling and college training were provided to the appellant, he was unable to continue with the program because his service-connected psychiatric disability had "flared up."

The appellant also submitted a report of an evaluation conducted in December 1989 by Robert O'Toole, M.D., which stated that the appellant "is substantially impaired for entrance into the competitive labor market." The RO reviewed the new evidence submitted by the appellant, and in December 1990 confirmed the existing rating and effective date. The Board denied entitlement to an increased rating and an earlier effective date, and the present appeal followed.

## II. Analysis

### A. Claim for Increased Rating

The appellant contends that the BVA erred in finding that a disability rating for chronic undifferentiated schizophrenia above 50% is not warranted. The appellant's contention has two elements. First, the appellant argues he is entitled to an increased

rating for his condition because it has become worse. Second, the appellant claims he is entitled to an increased rating based upon individual unemployability.

■ The VA has a duty to assist a veteran who submits a well-grounded claim. 38 U.S.C. § 5107; 38 C.F.R. 3.159 (1993); *Littke v. Derwinski*, 1 Vet.App. 90 (1990). This duty is not discretionary, *Littke*, 1 Vet. App. at 92, and it may, under appropriate circumstances, include a duty to conduct a thorough and contemporaneous medical examination. 38 C.F.R. § 3.326 (1993); *Green v. Derwinski*, 1 Vet.App. 121, 123 (1991); *Lineberger v. Brown*, 5 Vet.App. 367, 369 (1993); *Waddell v. Brown*, 5 Vet.App. 454 (1993). The medical examination must consider the records of prior medical examinations and treatment in order to assure a fully informed examination. *Id.*

In determining that the appellant was not entitled to an increased rating, the Board applied the appropriate rating codes for schizophrenia. 38 C.F.R. § 4.132, Diagnostic Codes (DC) 9201–9205 (1993). A 50% evaluation is appropriate for undifferentiated schizophrenia with considerable impairment of social and industrial adaptability. 38 C.F.R. § 4.132, DC 9201–9210 (1993). A 70% rating is warranted for severe impairment of social and industrial adaptability. *Id.* A 100% rating requires active psychotic manifestations of such extent, severity, depth, persistence, or bizarreness as to produce total social and industrial inadaptability. *Id.*

■ The BVA supported its determination that the appellant could be rated as only 50% disabled, 38 C.F.R. § 4.132, DC 9204, by relying on the November 1988 VA medical examination. Noting that the examination found the appellant oriented and coherent, with memory intact and no hallucinations, the examiner determined that the appellant did not satisfy the DC criteria for a higher rating. The Board recognized that the appellant had required repeated psychiatric hospitalization, treatment, and medication; however, it found that the most recent outpatient treatment did not show more than considerable impairment of social and industrial adaptability. Nonetheless, the Board should have conducted a contemporaneous examination of the appellant because the November 1988 examination is too remote from the October 1990 BVA decision to constitute a contemporaneous examination. A claim that a condition has become more severe is well grounded where the condition was previously service connected and rated, and the claimant subsequently asserts that a higher rating is justified due to an increase in severity since the original rating. *Proscelle v. Derwinski*, 2 Vet.App. 629, 632 (1992). Under those circumstances, pursuant to its duty to assist, the VA was obligated here to obtain a new medical examination to obtain evidence necessary to adjudicate the claimant's request for an increased rating. *Id.*

VA regulations specifically require the performance of a new medical examination in instances such as the present case. "Reexaminations ... will be requested whenever VA determines there is a need to verify ... the current severity of a disability." 38 C.F.R. § 3.327(a) (1993). In assessing the current severity of a disability, "reexaminations will be required if ... evidence indicates there has been a material change in a disability or that the current rating may be incorrect." *Id.* In this case, the appellant presented the letter from the rehabilitation counselor, Mr. Woodworth, tending to suggest that the appellant's condition had become worse. Furthermore, the appellant presented Dr. O'Toole's psychological examination report, prepared in December 1989, which also tended to suggest that the appellant's condition was more severe than his rating indicated. Thus, the appellant had presented evidence indicating both that there had been a material change in his condition, and that his 50% rating was insufficient. Therefore, the Board failed to conduct the reexamination of the appellant that was required in accordance with both the holdings of this Court and VA regulations. The Board's October 9, 1990, decision with regard to this matter must be vacated and the matter remanded for further development and findings consistent with this opinion.

■ The appellant also asserts that the Board erred in failing to assess his entitlement to a higher, including total, disability

rating due to individual unemployability. The appellant claimed entitlement to an increased rating due to individual unemployability in both his NOD and substantive appeal to the BVA. In fact, included with the substantive appeal was the letter by the appellant's rehabilitation counselor stating that the appellant was substantially industrially impaired and unable to function vocationally. The appellant also submitted Dr. O'Toole's December 1989 report stating that the appellant was substantially impaired for entrance into the competitive labor market.

While the appellant's request for an increased rating due to individual unemployability is apparent from all of the appellant's pleadings, the Board failed to address this claim and the supporting evidence in its October 9, 1990, decision. This Court has held that where the Board has failed to adjudicate a claim which is reasonably raised by a liberal reading of the claimant's pleadings, the Board has committed error. *Fanning v. Brown*, 4 Vet.App. 225, 228–29 (1993). Having examined the appellant's pleadings in this matter, we find that the issue of individual unemployability was reasonably raised. Therefore, the Board's failure to consider the issue was error, and the matter must be remanded for a readjudication consistent with this opinion.

■ Finally, 38 C.F.R. § 4.7 (1993) directs that where there is a question as to which of two evaluations is to be applied, the higher evaluation will be assigned where the disability picture more nearly approximates the criteria for that rating. The VA is instructed to give the veteran the benefit of the doubt where the evidence in a case is in relative equipoise. 38 U.S.C. § 5107(b). "In a case where there is significant evidence in support of an appellant's claim, as there is here, the Board must provide a satisfactory explanation as to why the evidence was not in equipoise." *Williams v. Brown*, 4 Vet.App. 270, 273–74 (1993). The Board, however, has failed to explain why the appellant was assigned his present rating rather than a higher rating. We find that there was significant evidence in support of the appellant's claim, and that the Board failed to provide sufficient reasons or bases for its conclusion that

the evidence was not in equipoise. Accordingly, the Board's failure to do so was error, and the matter must be remanded for a readjudication consistent with this opinion.

#### B. *Entitlement to Earlier Effective Date*

The appellant claims the Board erred in finding that he is not entitled to an earlier effective date for the service connection of his undifferentiated schizophrenia. The Board based its decision on the finding that the June 1964 RO denial was a final decision, and that the appropriate effective date for the appellant's present service connection was the date the reopened claim was received following the final disallowance. 38 C.F.R. § 3.400 (1993). The appellant asserts that he advised the VA in his 1975 attempt to reopen his claim that he had been hospitalized at the Institute for a nervous breakdown in 1962, and that the VA's duty to assist required that it obtain those records. The appellant contends that the VA's failure to obtain these records was a breach of the duty to assist which resulted in the denial of his claim. Had the records been present, the appellant asserts, the record would have been complete and service connection accordingly granted at that time. Thus, the appellant essentially argues that all determinations regarding service connection made after 1975 but before the March 24, 1988, decision were the product of CUE because the decisions were based on an incomplete record.

■ As an initial matter, we must determine whether the appellant has properly pleaded CUE by specifying what the alleged error is, and by alleging why, if the purported CUE had not been made, the result would have been different. *See Fugo v. Brown*, 6 Vet.App. 40, 44 (1993). Here, the appellant has met that burden by contending that the VA was put on notice in 1975 that he was hospitalized at the Institute, but that the VA did not obtain these records, and by further contending that, had the Institute records been obtained prior to the adjudications in question, the determinations regarding service connection would have been different.

■ With regard to the appellant's substantive CUE claim, the Secretary asserts that the Board did not breach its duty to assist the appellant. The Secretary argues that because the RO repeatedly advised the appellant of the need to provide new and material evidence to reopen his claim, and because the appellant failed to provide this evidence, no duty to assist the appellant ever arose. In support, the Secretary quotes this Court:

> Where the VA notifies a claimant of the need for further evidence and the claimant fails to respond within one year of that notice, the claim is deemed to have been abandoned.... [I]ndividuals applying for benefits have a responsibility to cooperate with the agency in the gathering of evidence necessary to establish allowance of benefits.

*Morris v. Derwinski,* 1 Vet.App. 260, 264 (1991). *See also* 38 C.F.R. § 3.158(a) (1993). While the Secretary is certainly correct that a claimant has a responsibility to cooperate with the VA, his reliance on this proposition in the present case is misplaced.

■ This Court has held that a claimant does not always need to make a specific request that the VA procure private medical records. *Ivey v. Derwinski,* 2 Vet.App. 320, 322 (1992); 38 U.S.C. § 5107(a) (VA has duty to assist); *Pritchett v. Derwinski,* 2 Vet.App. 116, 122 (1992) (duty to assist includes obtaining private medical records); *accord Littke,* 1 Vet.App. 90. The duty to assist may arise when a claimant simply refers to the private medical examinations or treatments without making a specific request. *Ivey,* 2 Vet.App. at 322. In this instance, the duty to assist arose when the appellant referred to his treatment at the Institute, and it was not nullified by the appellant's purported failure to "provide new and material evidence," since it was the VA's duty to obtain that evidence in view of its relevance to proper adjudication of the claim. Accordingly, we find that the VA's failure to assist the appellant obtain his records from the Institute was a breach of the duty to assist.

In the case of *Porter v. Brown,* 5 Vet.App. 233 (1993), the appellant made a similar claim of an earlier effective date for a grant of service connection based on an assertion of CUE resulting from the VA's failure to perform its duty to assist. In that case, the Court found that CUE could not be found as a result of a breach of the duty to assist where the asserted basis of the breach was the VA's failure to obtain records that were not developed until after the disputed adjudication took place. *Id.* at 236–37. The Court left open the question of whether a claim of CUE may ever be based upon a breach of the duty to assist. *Id.*

■ In this case, the VA's failure to assist the appellant obtain private medical records was prior to the occurrence of the disputed adjudication. The VA's failure resulted in the creation of an incomplete rather than incorrect record. We have held that "[a] determination that there was a 'clear and unmistakable error' must be based on the record and law that existed at the time of the prior ... decision." *Russell v. Principi,* 3 Vet.App. 310, 314 (1992) (en banc). Thus, a claim of CUE is based upon an assertion that there was an incorrect application of the law or fact *as it existed at the time of the disputed adjudication. Id.* Since an analysis of whether CUE has been committed may only proceed on the record, *id.,* evidence that was not part of the record at the time of the prior determination may not form the basis of a finding that there was an act of clear and unmistakable error.

■ While it is true that an incomplete record may ultimately lead to an incorrect determination, it cannot be said that an incomplete record is also an incorrect record. If the facts contained in the record are correct, it is not erroneous, although not embodying all of the relevant facts. Rather, an incomplete record is just that—incomplete. It allows for further development of facts and law to advance the veteran's claim. "New or recently developed facts or changes in the law subsequent to the original adjudication may provide grounds for reopening a case or for a de novo review but they do not provide a basis for revising a finally decided case." *Id.* at 313. Thus, an incomplete record, factually correct in all other respects, is not clearly and unmistakably erroneous. This is true even in the present case where the

cause of the record's incompleteness is the VA's breach of the duty to assist. In short, the VA's breach of the duty to assist cannot form a basis for a claim of CUE because such a breach creates only an incomplete rather than an incorrect record. As unjust as this finding may appear, it is dictated by the law by which we are bound.

### III. Conclusion

Upon consideration of the record, the appellant's informal brief, and the Secretary's motion, the October 9, 1990, decision of the Board of Veterans' Appeals is affirmed in part, and vacated in part, and the matter is remanded in part for further proceedings consistent with this opinion.

KRAMER, Judge, concurring:

I write separately in response to part B of the dissent. Whatever ambiguity may have existed after the issuance of *Russell v. Principi*, 3 Vet.App. 310 (1992) (en banc), regarding the possibility of basing clear and unmistakable error (CUE) on a duty to assist violation (the sole basis for the dissent), such possibility has been put to rest by the Court's recent decision in *Damrel v. Brown*, 6 Vet.App. 242 (1994). In short, *Damrel* did nothing more than synthesize the *Russell* test into three prongs, all of which must be satisfied in order to have CUE:

> (1) "[e]ither the correct facts, as they were known at the time, were not before the adjudicator (i.e., more than a simple disagreement as to how the facts were weighed or evaluated) or the statutory or regulatory provisions extant at the time were incorrectly applied," (2) the error must be "undebatable" and of the sort "which, had it not been made, would have manifestly changed the outcome at the time it was made," *and* (3) a determination that there was CUE must be based on the record and law that existed at the time of the prior adjudication in question.

*Damrel*, 6 Vet.App. at 245 (quoting *Russell*, 3 Vet.App. at 313–14) (emphasis added).

The reports of treatment at the Institute, Pennsylvania Hospital, were not in the record at the time of all adjudications between June 1975 and March 1988, in which appellant alleges CUE. The language of prong (3) certainly eliminates any aspirations that the dissent may have in trying to reconstruct a record that did not exist at the time of the prior adjudications. This language, for all intents and purposes, is taken verbatim from the language of *Russell, supra*, at 314, which states that "[a] determination that there was a 'clear and unmistakable error' must be based on the record and the law that existed at the time of the prior [agency of original jurisdiction] or BVA decision." To the extent that the dissent hints that there may be "wiggle room" for going outside the record because of prong (1) (correct facts known at the time, *but not* before the adjudicator), such a reading would necessitate the existence of an inconsistency between prongs (1) and (3) in order to obtain the dissent's hoped for, but unsustainable result. The case law of this Court clearly indicates that constructive receipt applies *only* to VA records. *See Bell v. Derwinski*, 2 Vet.App. 611 (1992). Simply put, prong (1) means that facts so known at the time to be correct were in the VA record, but somehow were not actually in front of the adjudicator. For example, an appellant had submitted *three* items of evidence, all indicating a date stamp of receipt by the VA prior to the adjudication in question; however, in rendering a decision, the adjudicator specifically stated that the record contained *two* pieces of evidence submitted by the appellant. It is only in such a case that both prongs (1) and (3) can be satisfied, certainly not the situation here. Not to limit prong (1) to that evidence in the possession of the VA at the time of a particular challenged adjudication would require this Court to resolve disputes regarding what evidence *could* have been put into the record existing at the time such adjudication was made, perhaps decades ago. Such a process would involve ill-advised speculation by the Court, and, in my view, would provide unwise incentive to submit newly created evidence that purports to be outcome determinative and which bears a date prior to that of the adjudication which is the subject of the CUE claim.

STEINBERG, Judge, concurring in part and dissenting in part:

I concur in the opinion of the Court except for part II.B and its holding that a "breach of

the duty to assist cannot form a basis for a claim of [clear and unmistakable error]" (CUE) under 38 C.F.R. § 3.105(a) (1993). *Ante* at 383–84. I also do not agree that there necessarily was a breach of VA's duty to assist in either 1975, 1978, or 1979 [1] when the veteran sought to reopen his claim.

### A. *Duty to Assist*

Before concluding that the duty to assist in this case was violated by the Veterans' Administration (now Department of Veterans Affairs) (VA or Department) Regional Office (RO) in 1975, 1978, or 1979, it must first be determined whether such a duty to assist then existed. The current statutory duty to assist in 38 U.S.C. § 5107(a) was not enacted until 1988 (then as § 3007(a)) when it was added by the Veterans' Judicial Review Act, Pub.L. No. 100–687, § 103(a), 102 Stat. 4105, 4106 (1988) ("[Secretary] shall assist such a claimant [one who has submitted well-grounded claim] in developing the facts pertinent to the claim"). However, that enactment merely codified a regulatory obligation in 38 C.F.R. § 3.103(a) (1987) that had existed since 1972 and that had provided, in terms indistinguishable from those later enacted in section 5107(a), that "[i]t is the obligation of [VA] to assist a claimant in developing the facts pertinent to his [or her] claim."

In concluding that the VARO in 1979 did not err in not obtaining the March 1962 Institute report, the Board of Veterans' Appeals (BVA or Board) stated: "It is the responsibility of the claimant to provide reports of all private medical treatment pertinent to his claim." *Thomas A. Caffrey*, BVA 90– .... (Oct. 9, 1990), at 4. That statement is clearly wrong as a matter of law as to *today's* duty to assist under *Littke v. Derwinski*, 1 Vet.App. 90, 92 (1990) (quoting § 3.103(a)). However, since the Court in *Littke* was construing the same regulatory and statutory words as existed in regulation in 1979 I think it would be reasonable to conclude that there was a comparable duty to assist since at least the 1972 promulgation of § 3.103(a). At a minimum, a duty to assist arose in this case in 1979 (if not in 1975 and

1978) when the veteran specifically advised the RO about his 1962 psychiatric hospitalization at the Institute and gave the Institute's address (R. at 65), and that duty to assist was either for VA to seek the report *or* to tell the veteran to get it. Doing neither would clearly have been a violation in 1979 when the RO had a specific duty to respond to the veteran's very specific 1979 communication to it. *Cf. Godwin v. Derwinski*, 1 Vet.App. 419, 425 (1991) (duty to assist includes obligation to respond "one way or the other" to request for assistance).

According to the 1989 Statement of the Case, in 1975, 1978, and 1979 the RO informed the veteran in general terms that he needed to submit new and material evidence. R. at 106–07. Perhaps that was enough—at least up to 1979, but the record does not show what specific responses the RO gave at any of those times. Hence, I would hold that the duty to assist as described above might have been violated here and, if it was, then I would hold further, for the reasons set forth in part B, below, that that error constituted CUE. Accordingly, I would remand for the Board to readjudicate the CUE claim in light of the full record, which is not available to the Court.

### B. *CUE*

More fundamentally, I differ from the majority's holding that a CUE claim may never be premised on a duty-to-assist violation. I would tend to agree that such a violation could rarely meet the CUE prerequisite that the error must be one "which had it not been made, would have manifestly changed the outcome at the time it was made." *Russell v. Principi*, 3 Vet.App. 310, 313 (en banc) (1992). In this case, however, that CUE criterion is clearly met since we know that as soon as the RO learned in 1989 about the 1962 Institute record, which showed that the veteran had been treated for schizophrenia in the month after his discharge from service, it granted him service connection for that condition. R. at 81–82. Further, I agree with the majority (*ante* at 382) that the veteran

---

1. The majority holds that VA's duty to assist was breached but does not specify when that breach occurred. *Ante* at 383.

timely raised this issue with sufficient specificity in his August 1989 Notice of Disagreement. R. at 98.

For the following reasons, however, I do not agree with the majority that even if a failure to assist is demonstrated as to the RO's actions or inactions in 1975, 1978, or 1979 (or more than one of those years), that is a type of error which cannot constitute CUE under § 3.105(a). First, the Secretary has not contended that it could not be CUE—only that there was no duty-to-assist violation. Mot. at 7–8. Second, the Court's rationale for its conclusion that a duty-to-assist violation is not cognizable as the basis for a CUE claim—that "an incomplete record is [not] also an incorrect record" and that "an incomplete record, factually correct in all other respects, is not clearly and unmistakably erroneous" (*ante* at 383–84)—seems to be circular. For example, the Court concludes that "an analysis of whether CUE has been committed may only proceed on the . . . record at the time of the prior determination. . . ." *Ante* at 383–84. Yet, *Russell, supra*, this Court's seminal opinion on CUE, very clearly established as a basis for CUE that "[e]ither the correct facts, as they were known at the time, were not before the adjudicator or the statutory or regulatory provisions extant at the time were incorrectly applied." *Russell*, 3 Vet.App. at 313. Here both factors may exist. The then-regulatory duty to assist may have been violated in 1975, 1978, or 1979 (or more than one of those times), and there is no question that "the correct facts" (the schizophrenia diagnosis of the veteran in the month after service) were not before the RO when it denied service connection in each of those adjudications.

Hence, the Court's tautological distinction between an incomplete and an incorrect record seems manifestly at variance with a fundamental precept of *Russell*. Surely, it can just as reasonably be said that a record which *causes* the adjudicator to deny a claim when the "correct facts" would manifestly have produced the opposite result was an "incorrect" record and not just an "incomplete" one. In any event, I find nothing in *Russell* to warrant the incorrect/incomplete-record distinction which the majority attempts to make.

Moreover, the majority has taken a quotation out of context from *Russell*. *Ante* at 383–84. The majority relied on the third sentence in the following quotation without any reference to the first two sentences:

The short answer is that the claim which is reversed or amended due to a "clear and unmistakable error" is not being reopened. It is being revised to conform to the "true" state of the facts or the law that existed at the time of the original adjudication. New or recently developed facts or changes in the law subsequent to the original adjudication may provide grounds for reopening a case or for a de novo review but they do not provide a basis for revising a finally decided case.

*Russell*, 3 Vet.App. at 313. The reference to "new or recently developed facts" in the extracted sentence refers to evidence that did not exist at the time of the prior adverse determination as contrasted with "the 'true' state of the facts . . . that existed at the time of the original adjudication". Indeed, those latter words in *Russell* provide full, and fully contextual, justification for the analysis I have set forth above since, indisputably, the prior RO adjudications were not based on the "true state of the facts".

I concede that there is some language in *Russell* that could form a basis for the majority's conclusion here. That is the statement that a CUE determination "must be based on the record and the law that existed at the time of the prior [RO] or BVA decision." *Id.* at 314. That particular phrase in the *Russell* opinion, however, seems to have been focusing on the kind of example it went on to give of an error which could not be CUE—"a new medical diagnosis that 'corrects' an earlier diagnosis ruled on by previous adjudicators. . . ." *Russell*, 3 Vet.App. at 314. That is not the situation before us.

Moreover, the *Russell* language "record . . . that existed at the time" is not the equivalent of the majority's paraphrase "record at the time of the prior determination". *Ante* at 383–84. The *Russell* reference to "the record" must be read in the context of this Court's decisions expanding what consti-

tutes the "record" before the Department for purposes of determining the scope of review in this Court under 38 U.S.C. § 7252(b), which limits that review to "the record of proceedings before the Secretary and the Board". *See Bell v. Derwinski,* 2 Vet.App. 611, 612 (1992) (holding that documents which were not actually before the adjudicators but had been generated by VA employees or submitted to VA by claimant were, "in contemplation of law, before the Secretary and the Board and should be included in the record"). This concept of a "constructive" record greater than the record *actually* before the adjudicators provides a useful analogy for squaring the *Russell* statements in such a way as to conclude that an outcome-determinative document which existed at a time when fulfillment of an existing duty to assist would have discovered it was part of "the record" that should have been before the adjudicators if they were to adjudicate the claim on the "correct facts" or the "true state of the facts". *See also Murincsak v. Derwinski,* 2 Vet.App. 363, 372–73 (1992) ("The Court cannot accept the Board being 'unaware' of certain evidence, especially [but not necessarily exclusively] when such evidence is in possession of the VA, and the Board is on notice as to its possible existence and relevance.").

### C. *Response to Concurring Opinion's Reliance on Damrel Opinion*

In his concurring opinion, Judge Kramer asserts that his opinion for the Court in *Damrel v. Brown,* 6 Vet.App. 242, 245 (1994), "put to rest" the possibility that a duty-to-assist violation could constitute CUE because "*Damrel* did nothing more than synthesize the *Russell* test into three prongs". *Ante* at 384. I do not quarrel with *Damrel*'s synthesis, although the third prong would constitute a binding holding only if the Court's decision sustaining the Board's determination that there was no CUE in the 1967 prior RO adjudication were dependent on that prong. However, as to each of the two evidentiary items relied upon by the appellant in *Damrel,* the Court there held explicitly that even if they had been included explicitly within the record before the RO in 1967, they would be "not controlling for VA determinations" (a Social Security unemployability determina-

tion) and "not controlling with respect to ratings for compensation or pension" (a VA determination of total disability for VA insurance purposes). *Damrel,* 6 Vet.App. at 246. Hence, in *Damrel* there could not have been a valid CUE claim as to either piece of evidence since the *Russell* criterion of "manifestly chang[ing] the outcome" could not have been met.

Moreover, the *Damrel* opinion, in synthesizing a third *Russell* prong, reiterated the exact language of *Russell* that a CUE determination "must be based on the record and the law that existed at the time of the prior" adjudication. *Id.* at 245; *Russell,* 3 Vet.App. at 314. I have analyzed that very language in part B., above, and explained how I believe those words should be read in *Russell* in the context of the particular facts of this case where the excluded true facts are undebatably outcome determinative. Although *Damrel* may lend support to the majority's view on CUE here, it hardly "put to rest" the issue before us in the instant case.

Finally, I want to stress again, as I did at the outset of part B., that the CUE prerequisite of manifestly changing the outcome could rarely be met where the CUE asserted is a duty-to-assist failure. Only where it is indisputable that compliance with the duty to assist would have changed the outcome of the prior merits adjudication would such a CUE claim even have to be considered. Making such an outcome-determinative judgment would not involve the speculation suggested by the concurring opinion, but, rather, would eliminate the need even to consider such a CUE assertion (was there a violation of the duty to assist as it existed, if it did, at the time?) in the vast majority of instances in which a duty-to-assist CUE claim might be raised. As to the concurrence's Chicken-Little cry that a Frankenstein's monster of "newly created evidence" that "bears a date prior to that of the [old] adjudication" and "that purports to be outcome determinative" will stalk our CUE jurisprudence, it would be well to remember that the sky never did fall and to leave consideration of any such factors to the elected policy-making branches of government.

### D. Conclusion

For the above reasons, I would remand the appellant's properly raised CUE claim for readjudication by the BVA on the basis of the above analysis.