Citation Nr: 1313644 
Decision Date: 04/24/13 Archive Date: 05/03/13

DOCKET NO. 11-00 724 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Providence, Rhode Island


THE ISSUE

Entitlement to an initial rating greater than 30 percent for posttraumatic stress disorder (PTSD), to include entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU).


REPRESENTATION

Appellant represented by: Chisholm Chisholm & Kilpatrick, LTD.


WITNESSES AT HEARING ON APPEAL

Appellant and spouse


ATTORNEY FOR THE BOARD

S.K.C. Boyce, Associate Counsel

INTRODUCTION

The Veteran served on active duty from July 1952 to July 1954. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a January 2010 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Providence, Rhode Island, which granted service connection for PTSD and assigned a 30 percent disability rating, effective June 28, 2002.

In January 2013, the Veteran and his wife testified at a video-conference hearing before the undersigned Veteran's Law Judge. A transcript of this hearing has been associated with the claims file.

Please note this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2012). 38 U.S.C.A. § 7107(a)(2) (West 2002).

The appeal is REMANDED to the Department of Veterans Affairs Regional Office. VA will notify the appellant if further action is required.


REMAND

Unfortunately, a remand is required in this case. Although the Board sincerely regrets the additional delay, it is necessary to ensure that there is a complete record upon which to decide the Veteran's claim so he is afforded every possible consideration.

The Veteran was last provided with a VA examination to assess the current severity of his PTSD in December 2011. While this examination was provided less than a year and a half ago, the evidence indicates that recent important changes to the Veteran's occupational status may have resulted in significant changes to the severity of symptoms. In June 2012, the VA mental health treatment records note that the Veteran was facing a significant life change with the selling of his auto body shop and land and would need additional support during the transition, though his symptoms had been generally improving up to that time. Approximately six months later, in December 2012, VA mental health treatment notes show that the Veteran reported an increase in his symptoms of intrusive memories because of the increased amount of unstructured time. The Veteran also testified to this increase in symptoms at the January 2013 hearing. Furthermore, though his treating psychiatrist generally noted that he was handling the adjustment well, the Global Assessment of Functioning (GAF) scale scores she assigned in his treatment notes from June 2012 onward show a significant shift downward from the previous scores assigned by the treating VA psychiatrist and the VA examiner prior to the date, which reflected mild symptoms with generally good functioning and some meaningful interpersonal relationships, to regular reports of lower scores that reflect moderate symptoms or moderate difficulty in social and occupational functioning. 

Additionally, evidence developed since the change in the Veteran's occupational status indicate that his PTSD may have had a greater impact on his occupational functioning than was previously communicated to or assessed by the Veteran's mental health care providers and the VA examiner. In January 2013, the Veteran's attorney asserted that the Veteran's PTSD symptoms such as memory problems, difficulty with customers, and inability to deal with change ultimately took a toll on the successful business he had owned for many years. Furthermore, at his January 2013 hearing, the Veteran testified to the problems he began having with the auto body shop, and his wife testified to the interference of the Veteran's interpersonal conflicts and inability to adapt to change caused with his occupational functioning. When asked to comment on the effect the Veteran's symptoms of PTSD had on his ability to work, she testified that "he wasn't able to continue the business anymore."

When the evidence indicates that there has been a material change in the Veteran's disability or the current rating may be incorrect, VA has a duty to assist the claimant by providing a thorough and contemporaneous medical examination. See Hart v. Mansfield, 21 Vet. App. 505, 508 (2007); Snuffer v. Gober, 10 Vet. App. 400, 403 (1997); Caffrey v. Brown, 6 Vet. App. 377, 381 (1994)); 38 C.F.R. § 3.327(a); see also 38 U.S.C.A. § 5103A(d)(1). A new examination is appropriate when evidence added to the record, including the Veteran's own statements, suggests that the condition has worsened since the last examination. Caffrey, 6 Vet. App. at 381; VAOPGCPREC 11-95 (1995). 

Therefore, the Veteran should be provided with a contemporaneous VA examination in order to assess the current severity of the his service-connected PTSD with all due consideration of any changes to his condition caused by his recent occupational changes, as well as the effect of his condition on his occupational impairment given the recent contentions and testimony in the evidence submitted since the December 2011 VA examination. Furthermore, a remand is required in order to ensure that an examination report is obtained that reports the current severity of the Veteran's PTSD symptoms following consideration of his full relevant medical history. See Stefl v. Nicholson, 21 Vet. App. 120, 123 (2007); Green v. Derwinski, 1 Vet. App. 121, 124 (1991); see also Barr v. Nicholson, 21 Vet. App. 303, 312 (2007) (holding that when VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate). 

The evidence of record, particularly the January 2013 letter from the Veteran's attorney and the testimony given by the Veteran and his wife at the January 2013 Board hearing, raise the issue of entitlement to a TDIU. Since entitlement to a TDIU is part of the Veteran's increased rating claim, the proper remedy here is for the Board to remand, rather than refer, the TDIU component of the increased rating issue to the agency of original jurisdiction (AOJ) for proper development and adjudication.

The AOJ should send the VCAA notice letter for his TDIU claim. This letter should notify the Veteran and his attorney of any information or lay or medical evidence not previously provided that is necessary to substantiate the TDIU claim. The notice should also indicate what information or evidence should be provided by the Veteran and what information or evidence VA will attempt to obtain on the Veteran's behalf. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); see also Quartuccio v. Principi, 16 Vet. App. 183, 187 (2002).

Lastly, an effort should be made to obtain any outstanding VA mental health treatment records for the Veteran from the VA Medical Center in Providence, Rhode Island, dated since December 2012, and from the New Bedford Vet Center in Fairhaven, Massachusetts, dated since April 2012. 38 U.S.C.A. § 5103A(b)(3), (c)(2); 38 C.F.R. § 3.159(c)(2), (3). 
 
Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. Send a VCAA notice letter notifying the Veteran and his attorney of any information or lay or medical evidence not previously provided that is necessary to substantiate the TDIU component of the claim on appeal. This notice must indicate what information or evidence the Veteran should provide, and of what information or evidence VA will attempt to obtain on his behalf. See 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b).

2. Obtain all of the Veteran's outstanding VA mental health treatment records from the VA Medical Center in Providence, Rhode Island, and the New Bedford Vet Center in Fairhaven, Massachusetts. All information which is not duplicative of evidence already received should be associated with the claims file or the Veteran's electronic claims folder. 
 
3. Thereafter, schedule the Veteran for a VA psychiatric examination. The claims file and a copy of this Remand must be made available to and reviewed by the examiner in conjunction with the examination. Any indicated tests and studies are to be conducted. 

Following examination of the Veteran, the examiner should identify what symptoms, if any, the Veteran currently manifests or has manifested in the recent past that are specifically attributable to his service-connected PTSD. The examiner must conduct a detailed mental status examination.

The examiner must also discuss the effect, if any, of the Veteran's PTSD on his social and occupational adaptability. 

The examiner should assign a Global Assessment of Functioning (GAF) score for the Veteran's PTSD consistent with the American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM- IV) and explain the significance of the score.

The examiner should state whether there have been any recent changes to the severity of the Veteran's PTSD since he stopped working over the summer of 2012.

Additionally, upon review of the Veteran's history of business ownership through 2006 and subsequent employment at the business he formerly owned through 2012, the examiner should opine as to whether it is at least as likely as not that the Veteran's service-connected disabilities (PTSD, tinnitus, and hearing loss), either alone or in the aggregate, render him unable to secure or follow a substantially gainful occupation. Consideration may be given to the Veteran's level of education, special training, and previous work experience in arriving at a conclusion, but not to his age or to the impairment caused by nonservice-connected disabilities.

If any requested information cannot be provided without resort to speculation, indicate whether the inability to provide a definitive opinion is due to a need for further information, because the limits of medical knowledge have been exhausted, or for some other reason.

The examiner must provide a comprehensive report including a complete rationale for all opinions and conclusions reached that clearly states the conclusions, identifies the supporting data for each conclusion, and provides a reasoned medical explanation connecting the supporting data to each conclusion.

4. Review the medical examination report obtained to ensure that the remand directives have been accomplished, and return the case to the examiner if all questions posed are not answered. 

5. Finally, readjudicate the claim on appeal, including the claim of entitlement to TDIU as a component of the Veteran's claim of entitlement to a higher initial evaluation for PTSD. If the benefit sought on appeal is not granted, issue the Veteran and his representative a supplemental statement of the case and provide an opportunity to respond.

The appellant has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2012).



_________________________________________________
K. Parakkal
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252, only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b).