Citation Nr: 1725228 
Decision Date: 06/30/17 Archive Date: 07/10/17

DOCKET NO. 08-22 614 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Philadelphia, Pennsylvania


THE ISSUES

1. Entitlement to service connection for obstructive sleep apnea, also claimed as REM sleep behavior disorder.

2. Entitlement to service connection for a heart murmur, also claimed as a heart condition.

3. Entitlement to service connection for gastroesophageal reflux disease (GERD).

4. Entitlement to service connection for type one chiari.

5. Entitlement to an initial compensable disability rating for service-connected bilateral hearing loss.


REPRESENTATION

Appellant represented by: Matthew Gindele, Attorney

WITNESSES AT HEARING ON APPEAL

Appellant and M.L.


ATTORNEY FOR THE BOARD

Matthew Miller, Associate Counsel


INTRODUCTION

The Veteran had active service from July 1985 to October 1985, from November 2002 to October 2003, and from August 2004 to May 2005.

This matter initially came before the Board of Veterans Appeals (Board) on appeal from December 2007 and April 2008 rating decisions by the Department of Veterans Affairs (VA) Regional Office (RO) in Philadelphia, Pennsylvania.

A Travel Board hearing was held in October 2010 before the undersigned Veterans Law Judge. A copy of the transcript of that hearing is of record. 

In February 2011, the Board remanded the Veteran's appeal for additional development. During development, several of the Veteran's claims were completely granted, and those matters are no longer before the Board. The appeal has since returned to the Board for additional consideration.

This appeal was processed using the Virtual VA and Veterans Benefits Management System (VBMS) paperless claims processing systems. Any future consideration of this appellant's case should take into account the existence of these records. 

The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the appellant if further action is required.
REMAND

Review of the record reveals that a remand is necessary to ensure that there is a complete record upon which to decide the Veteran's claim. Specifically, remand is required to receive additional VA treatment records and to obtain new VA opinions and/or examinations. This is true in part as a result of several of the benefits granted during Remand development.

Initially, the Board acknowledges that the Veteran's service treatment records are unavailable and has concluded that additional attempts to obtain these records would be futile. 

Primarily, it is the Veteran's contention that service connection is warranted for various conditions, to include a sleep disorder, a heart disorder, GERD, and for type one chiari. It is argued that these conditions were incurred in active service. He also claims that a compensable rating is warranted for his service-connected bilateral hearing loss. 

As noted above, the Board Remanded the Veteran's appeal in February 2011 for additional development. During development, the Veteran was awarded service connection for residuals of traumatic brain injury (100 percent disabling since April 2007); posttraumatic stress disorder (PTSD) (50 percent disabling since April 2007); mild gastritis with mild irritable bowel syndrome (30 percent disabling since April 2007); and bilateral tinnitus (10 percent disabling since April 2007). His service-connected bilateral hearing loss remains noncompensable and will be addressed separately below. While the Veteran is now considered 100 percent disabled, the remaining issues on appeal require further development as there may be other potential benefits available to him. 

Service Connection Claims

Pursuant to the Board's remand, the Veteran was afforded VA examinations for his claimed conditions in March 2011, but the examiner did not have access to the Veteran's claims file at the time. In February 2012, VA obtained addendum opinions from the same examiner. The examiner determined that the Veteran did not suffer from a chronic sleep disorder and cited to a normal sleep study from June 2008. The examiner concluded that an opinion regarding the Veteran's claimed sleep apnea as a result of or caused by any psychiatric condition was not necessary at the time. The examiner also remarked that the Veteran's entrance examination showed a benign systolic heart murmur. However, a June 2007 echocardiogram revealed normal results. The examiner determined that the Veteran's pre-existing benign functional heart murmur was of no clinical significance and no opinion was necessary. There were no further remarks.

The February 2012 addendum opinion also noted a diagnosis of mild GERD, but the examiner concluded that the Veteran's GERD was not caused by or a result of an infectious agent while he was stationed in Iraq or Kuwait. The examiner reasoned that "there is no evidence-based medical literature that I am aware of" that associates GERD with exposure to infectious agents from the Gulf War. Finally, the examiner also noted that the Veteran has a chiari malformation, but stated that it was congenital in origin, meaning that the Veteran was born with it and it was not aggravated by any service-connected condition. There were no further remarks.

Notably, the Board observes a VA memo which suggests that the prior examinations and/or opinions were inadequate for rating purposes. However additional action was not undertaken to revise those opinions. The Board also observes that the most recent and pertinent VA opinion for these claims was over 5 years ago. Moreover, the Veteran was later awarded service connection for several additional claims, which are relevant to the issues herein and any possible secondary service connection claim. 

In light of the above, additional development is needed.

Thus, on remand, an addendum opinion should be provided which addresses whether the Veteran has a chronic, clinically-identifiable sleep disorder that was incurred in service or is the result of or aggravated by his now service-connected disabilities. Furthermore, an addendum opinion should be provided to determine whether the Veteran has a chronic, clinically-identifiable heart disorder, to include a heart murmur, and if so, whether it clearly and unmistakably pre-existed service, and if so whether it was aggravated by service. Likewise, an addendum opinion addressing the etiological nature of the Veteran's diagnosed mild GERD should be obtained, to include whether it was incurred in service or the result of or aggravated by his now service-connected disabilities or Gulf War service. Finally, an addendum opinion is requested to also address whether the Veteran's chiari malformation is congenital or developmental in nature, and, if so, whether there was a superimposed disease or injury in service. If additional examinations are necessary, they should be provided. 

Initial Compensable Rating for Bilateral Hearing Loss

The Veteran's most recent and pertinent VA examination for his bilateral hearing loss was in March 2011. The results of this examination resulted in a continued noncompensable rating under 38 C.F.R. § 4.85, Table VII (2016).

Generally, contemporaneous medical records are required to assess a Veteran's disability level in a rating decision. In Caffrey v. Brown, the United States Court of Veterans Appeals (CAVC) held that a November 1988 examination was too remote from an October 1990 Board decision to constitute a contemporaneous examination. Caffrey v. Brown, 6 Vet. App. 377, 381 (1994). See also Snuffer v. Gober, 10 Vet. App. 400, 403 (1997) ("Where the appellant complained of increased hearing loss two years after his last audiology examination, VA should have scheduled the appellant for another examination"). Here, the evidence of record indicates that a March 2011 VA examination, upon which the noncompensable disability rating is based and continued, is not contemporaneous. 

Given the above, the Board finds that it likely that the Veteran's bilateral hearing loss has worsened in the 6 years since the previous examination. Therefore, the Veteran's medical record concerning his bilateral hearing loss disability is no longer contemporaneous and a new examination must be provided in order to give an accurate evaluation reflecting the level of his current disability.

Finally, on remand, updated VA treatment records should be obtained and associated with the electronic claims file. See 38 C.F.R. § 3.159(c)(2); see also Bell v. Derwinski, 2 Vet. App. 611 (1992).

Accordingly, the case is REMANDED for the following action:

1. The AOJ should obtain any outstanding VA treatment records. If the AOJ cannot locate such records, it must specifically document the attempts that were made to locate them, and explain in writing why further attempts to locate or obtain any government records would be futile. The AOJ must then: (a) notify the claimant of the specific records that it is unable to obtain; (b) explain the efforts VA has made to obtain that evidence; and (c) describe any further action it will take with respect to the claim. If there are no pertinent records since the last remand, that too should be noted. All attempts to obtain records should be documented in the claims file.

Thereafter, arrange for VA addendum opinions and/or examinations (if necessary) of the Veteran's claimed disabilities. To the extent the opinions and/or examinations can be combined before appropriate examiners, that would be proper. The fact that the matters are set out in separate paragraphs should not be taken to mean than separate examinations are required.

2. The Veteran's claims file should be made available to the examiner(s) and the examiner(s) should indicate that he/she reviewed the file in the examination report(s).

After the review of the claims file and examination(s) of the Veteran (if necessary), the examiner(s) should identify and state all disabilities found. An explanation for any opinions expressed must be provided, and if the requested information cannot be provided without resort to speculation, the examiner(s) should so state and explain why.

3. If the examiner does not find a sleep disorder or finds that a diagnosis of such is not appropriate, the examiner should give specific reasoning for that conclusion. If no disability is found the examiner must express whether the disability existed earlier in the appeal period and the examiner should clearly explain why the noted evidence does not establish a chronic diagnosis.

If and only if the examiner finds that a sleep disorder is present, or was present at any time during the appeal period though it has since resolved, the examiner should then opine whether the Veteran's identified disability at least as likely as not (50 percent or greater probability) began in or is otherwise the result of military service, or if it is due to, the result of, or aggravated by his now service-connected disabilities.

4. The examiner should accept as fact that the Veteran had a pre-existing heart murmur at the time he entered military service, as evidenced by his medical entrance examination. The nature of that heart disorder should be set out. Specifically, is the pre-service heart disorder properly characterized as a benign heart murmur? If not, what would be the appropriate diagnosis? Further, an opinion is requested as to whether there is clear and unmistakable evidence that a heart disorder, if found, pre-existed service.

Additionally, based on the clinical examination (if indicated), a review of in service and post-service treatment records, and with consideration of the Veteran's statements, the examiner is also asked to provide an opinion as to the following:

(a) If not pre-existing service, is at least as likely as not (50 percent or greater probability), that the Veteran's heart disorder is etiologically related to his service or the result of, due to, or aggravated by his now service-connected disabilities;

(b) If pre-existing, did the Veteran's pre-existing heart disorder permanently increase in severity during service; and if so, was this increase clearly and unmistakably due to the natural progress of this condition? Please note that a temporary worsening, without a permanent increase in severity is not considered aggravation.

5. Obtain an addendum opinion to determine exact nature and etiology of his current mild GERD. The examiner must opine whether the Veteran's mild GERD at least as likely as not (50 percent or greater probability) began in or is otherwise the result of military service, or if it is due to, the result of, or aggravated by his now service-connected disabilities. The examiner is also asked to express an opinion as to whether the Veteran's gastrointestinal disability is the result of a "bug" that the Veteran was exposed to in Iraq or Kuwait. 

6. Thereafter, obtain an addendum opinion to determine the exact nature and etiology of his chiari malformation. 

After review of the evidence of record and with consideration of the Veteran's statements, the examiner must provide opinions as to the following:

(a) Is the Veteran's current chiari malformation a congenital or developmental defect, OR a congenital or developmental disease?

(b) If the Veteran's current chiari malformation, is deemed to be a congenital or developmental defect, the examiner must opine as to whether there was any superimposed disorder during the Veteran's active duty service.

(c) If the Veteran's current chiari malformation is deemed to be a congenital or developmental disease, does the evidence of record clearly and unmistakably show that the disease existed prior to the Veteran's entrance into active duty? If so, what evidence supports that conclusion?

(d) With respect to any such congenital disease that the examiner finds existed prior to the Veteran's entrance into active duty, is there clear and unmistakable evidence that the disease was not aggravated during active service? The term "aggravation" means an increase in disability during active service beyond the natural progress of the preexisting condition. If so, what evidence supports that conclusion?

(e) If not congenital, the examiner should offer comments and an opinion addressing whether it is at least as likely as not that the Veteran's chiari malformation is in any way causally related to, or has been aggravated (permanently made worse) by, his service-connected disabilities. If aggravation is found, the examiner should attempt to quantify the degree of additional disability resulting from the aggravation. 

A complete rationale should be provided for all opinions and conclusions, including a discussion of the facts and medical principles involved.

7. After completing the preceding development, schedule the Veteran for a new VA audiological examination to assess the current severity of his bilateral hearing loss.

The audiologist is requested to review all pertinent records associated with the claims file, including the Veteran's service treatment records, post-service medical records, and the Veteran's own assertions. 

The VA audiologist is asked to fully describe the functional effects caused by the bilateral hearing disability in the final report.

8. The AOJ should then review the aforementioned reports to ensure that they are in complete compliance with the directives of this remand, and that the examiner has documented the consideration of all records. If the reports are deficient in any manner, the AOJ must implement corrective procedures. 

9. The AOJ should then readjudicate the Veteran's claims. Should the benefits sought on appeal remain denied, the Veteran and his representative should be provided with a Supplemental Statement of the Case (SSOC). An appropriate period of time should be allowed for response.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).


_________________________________________________
MICHAEL D. LYON 
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2016).