Citation Nr: AXXXXXXXX
Decision Date: 05/27/21 Archive Date: 05/27/21

DOCKET NO. 200227-66567
DATE: May 27, 2021

ORDER

Entitlement to an initial rating in excess of 30 percent for arteriosclerotic heart disease (coronary artery disease (CAD), status post myocardial infarction; obstructive coronary artery disease with decrease posterolateral hypokinesis) is denied.

REMANDED

Entitlement to an initial rating in excess of 50 percent for sleep apnea to include bronchitis with reactive airway disease and bronchitis with reactive airway disease, asbestosis, atelectasis with hypo inflated lungs, is remanded.

FINDING OF FACT

The Veteran's CAD has been manifested by left ventricular ejection fraction of 50 to 55 percent and a METs level greater than 5 METs but not greater than 7 METs; but not by more than one episode of acute congestive heart failure, or a workload of greater than 3 METs but not greater than 5 METs resulting in dyspnea, fatigue, angina, dizziness, or syncope; or left ventricular dysfunction with an ejection fraction of 30 to 50 percent.

CONCLUSION OF LAW

The criteria for the assignment of an initial disability in excess of 30 percent for CAD have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.159, 4.1, 4.2, 4.3, 4.7, 4.15, 4.104, DC 7005.

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served honorably on active duty from February 1984 to June 1984, and from June 1985 to June 2005.

This matter comes before the Board of Veterans' Appeals (Board) from an October 2018 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Washington, District of Columbia. 

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA's decision on their claim to seek review. The Veteran chose to participate in VA's test program RAMP, the Rapid Appeals Modernization Program. This decision has been written consistent with the new AMA framework.

By way of background, the Veteran filed his claims in June 2018, which were granted in a rating decision from October 2018. The same rating decision granted service connection for hypertension, deferred a decision on asbestosis, and denied service connection for tinnitus and increased ratings for syncope and hearing loss. The Veteran filed a timely Legacy Notice of Disagreement (NOD) in January 2019 appealing only the initial ratings for sleep apnea and CAD, the issues on appeal. The Veteran was issued a statement of the case (SOC) in February 2020. The Veteran then filed a VA Form 10182 NOD in February 2020, opting into Appeals Modernization. The Veteran requested Direct Review by a Veterans Law Judge, and the Veteran's claim was placed on the Board's docket. Thus, the Board will consider the February 2020 SOC as the Agency of Original Jurisdiction's (AOJ) rating decision for purposes of this appeal. All evidence of record at the time of the February 2020 SOC is subject to review.

Increased Ratings

Disability evaluations are determined by the application of a schedule of ratings which is based on the average impairment of earning capacity in civil occupations. Separate diagnostic codes identify the various disabilities. 38 U.S.C. § 1155; 38 C.F.R. § Part 4. Where a veteran appeals the initial rating assigned for a disability at the time that service connection for that disability is granted, evidence contemporaneous with the claim and with the initial rating decision granting service connection would be most probative of the degree of disability existing at the time that the initial rating was assigned and should be the evidence "used to decide whether an original rating on appeal was erroneous . . . ." Fenderson v. West, 12 Vet. App. 119, 126 (1999). If later evidence indicates that the degree of disability increased or decreased following the assignment of the initial rating, "staged" ratings may be assigned for separate periods of time based on facts found. Id.

1. Entitlement to an initial rating in excess of 30 percent for arteriosclerotic heart disease (coronary artery disease (CAD), status post myocardial infarction; obstructive coronary artery disease with decrease posterolateral hypokinesis)

The Veteran contends generally that his service-connected CAD is more severe than is currently rated. However, based on the evidence of record, the Board finds that the preponderance of the evidence is against a finding that a rating in excess of 30 percent is warranted.

The Veteran's CAD is assigned a 30 percent disability rating under Diagnostic Code 7005. 38 C.F.R. § 4.104, DC 7005 which provides ratings for arteriosclerotic heart disease (coronary artery disease) and requires documented coronary artery disease.

Under DC 7005, a 30 percent rating is warranted for arteriosclerotic heart disease resulting in a workload of greater than 5 METs but not greater than 7 METs causing dyspnea, fatigue, angina, dizziness, or syncope, or; evidence of cardiac hypertrophy or dilatation on electrocardiogram, echocardiogram, or X-ray. Id.

A 60 percent rating is warranted for arteriosclerotic heart disease resulting in more than one episode of acute congestive heart failure in the past year, or; a workload of greater than 3 METs but not greater than 5 METs causing dyspnea, fatigue, angina, dizziness, or syncope, or; left ventricular dysfunction with an ejection fraction of 30 to 50 percent. Id. Finally, a 100 percent rating is warranted for arteriosclerotic heart disease resulting in chronic congestive heart failure, or; workload of 3 METs or less resulting in dyspnea, fatigue, angina, dizziness, or syncope, or; left ventricular dysfunction with an ejection fraction of less than 30 percent. Id.

For rating diseases of the heart, one MET (metabolic equivalent) is the energy cost of standing quietly at rest and represents an oxygen uptake of 3.5 milliliters per kilogram of body weight per minute. When the level of METs at which dyspnea, fatigue, angina, dizziness, or syncope develops is required for rating, and a laboratory determination of METs by exercise testing cannot be done for medical reasons, an estimation by a medical examiner of the level of activity (expressed in METs and supported by specific examples, such as slow stair climbing or shoveling snow) that results in dyspnea, fatigue, angina, dizziness, or syncope may be used. 38 C.F.R. § 4.104, Note 2.

The Veteran filed a claim for service connection for sleep apnea and heart condition in May 2018. Upon a VA heart conditions examination conducted in August 2018, it was noted the Veteran was diagnosed with CAD, status post myocardial infarction, obstructive CAD with decreased posterolateral hypokinesis associated with syncope in 2010. The Veteran requires continuous medication for HTN and CAD, to include Ramipril and Toprol for HTN and Lipitor, Plavix and Aspirin for CAD. There was no evidence of chronic heart failure, cardiac arrhythmia, heart valve condition, infectious heart conditions or pericardial adhesions. He had a resting heart rate at 68 beats per minute with a regular rhythm, normal sounds, no jugular-venous distention and clear auscultation of the lungs. There was a normal peripheral pulse bilaterally, no lower extremity edema and his blood pressure was 137 systolic and 95 diastolic. An August 2018 echocardiogram recorded a LVEF of 50 to 55 percent with normal wall motion and thickness. An interview-based METs test revealed Veteran reports of dyspnea and dizziness consistent with activities such as walking 1 flight of stairs, golfing (without cart), mowing lawn (push mower), and heavy yard work (digging). The estimate interview based METs level was greater than 7-9 based on the Veteran's current activities. The examiner found the function impact of his disability would afford the Veteran difficulty with heavy lifting, pushing, pulling, prolonged standing and walking. 

Based on the lay and medical evidence of record, the Board finds that the preponderance of the evidence is against a rating in excess of 30 percent as the records do not account for any acute congestive heart failure or workload of greater than 3 METs but not greater than 5 METs, or a left ventricular dysfunction with an ejection fraction of 30 to 50 percent. 

The Board further finds that no additional higher or alternative ratings under different diagnostic codes are warranted. The Veteran's service-connected disability has consistently been characterized as CAD, with no evidence of valvular heart disease, infectious heart disease, congestive heart failure, or other heart conditions. 38 C.F.R. § 4.104, DCs 7000 - 7004, 7006-7008, 7010-7123. Further, the Veteran has not alleged, and the medical evidence does not show, diastolic pressure predominantly above 120, and therefore an increased rating based on hypertension is not warranted. 38 C.F.R. § 4.104, DC 7101.

All potentially applicable diagnostic codes have been considered. See Schafrath v. Derwinski, 1 Vet. App. 589, 593 (1991). Based on the evidence of record, the Board finds that the preponderance of the evidence is against a rating in excess of 30 percent for the Veteran's CAD. As such, the benefit-of-the-doubt doctrine is inapplicable. 38 C.F.R. § 4.3. For these reasons, the claim is denied.

 

REASONS FOR REMAND

1. Entitlement to an initial rating in excess of 50 percent for sleep apnea to include bronchitis with reactive airway disease and bronchitis with reactive airway disease, asbestosis, atelectasis with hypo inflated lungs, is remanded.

Remand is needed to correct a pre-decisional duty to assist error that occurred prior to the October 2018 rating decision on appeal.

The Board observes that in implementing the grant of service connection for sleep apnea, the initial 50 percent evaluation was based on a July 2014 polysomnography report diagnosed the Veteran with moderate obstructive sleep apnea and severe hypoxemia. A CPAP machine was recommended and ordered. 

A July 2016 VA treatment note documents "evidence of CO2 retention on chem panel, likely related to untreated OSA. Chronic hypercapnia may be playing role in patient symptom". Further, the Veteran contends that his sleep apnea is more severe than his assigned initial evaluation.

Given the foregoing, the Board observes that the July 2014 sleep study may not accurately reflect the current severity and manifestations of the Veteran's service-connected sleep apnea. See Snuffer v. Gober, 10 Vet. App. 400, 403 (1997) (holding that a veteran was entitled to a new examination after a two year period between the last VA examination and the veteran's contention that his disability had increased in severity); see also Caffrey v. Brown, 6 Vet. App. 377, 381 (1994) (noting that an examination too remote for rating purposes cannot be considered "contemporaneous").

Accordingly, in order to ensure that the Veteran's claim is afforded full consideration, the Board concludes that a reexamination is necessary to understand and properly rate this disability.

The matters are REMANDED for the following action:

1. Schedule the Veteran for an examination by an appropriate clinician to address the nature and severity of his service-connected sleep apnea and all associated disabilities. The examiner must review the claims file and conduct an in-person examination. Any necessary tests or studies should be conducted.

 

 

MARJORIE A. AUER

Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board Kelsey Love, Associate Counsel

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.