**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

No. 15-3669

PAULINE GARCIA, APPELLANT,

V.

DAVID J. SHULKIN, M.D.,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued June 26, 2017                          Decided August 9, 2017)

*William A. L'Esperance*, of Albuquerque, New Mexico, for the appellant.

*Omar Yousaf*, with whom *Leigh A. Bradley*, General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Kenneth A. Walsh*, Deputy Chief Counsel, all of Washington, D.C., were on the brief for the appellee.

Before DAVIS, *Chief Judge*, and PIETSCH and GREENBERG, *Judges*.

DAVIS, *Chief Judge*: The appellant, Pauline Garcia, appeals through counsel a May 19, 2015, Board of Veterans' Appeals (Board) decision that found no clear and unmistakable error (CUE) in an October 2006 Board decision that denied her late husband's claim for benefits for a mental disorder characterized by paranoia. Record (R.) at 2-23. This appeal is timely, and the Court has jurisdiction to review the Board's decision pursuant to 38 U.S.C. § 7252(a). The matter was referred to a panel of the Court on May 11, 2017, to resolve a constitutional question. For the reasons that follow, the Court will dismiss this appeal with prejudice.

## I. BACKGROUND

Mrs. Garcia's husband, Teofilo O. Garcia, served on active duty in the U.S. Army from August 1952 to August 1954. His August 1954 separation examination revealed that his psychiatric state was normal.

The record contains a November 1981 summary of Mr. Garcia's medical history from his private physician, John Smoker, M.D. Dr. Smoker's summary reveals that he first treated Mr. Garcia in November 1965 for a burn to the eyes from a welding mishap. The summary states that

Dr. Smoker first treated Mr. Garcia for paranoia in August 1969, at which time he prescribed medication.

In July 2002, Mr. Garcia filed a claim for benefits for a "history of paranoia." R. at 909. In July 2003, a VA regional office (RO) denied the claim. Mr. Garcia filed a Notice of Disagreement (NOD) with that decision and ultimately appealed to the Board.

In July 2003, VA received a letter from Dr. Smoker stating that he had treated Mr. Garcia from 1965 to 1998, and that his treatment included medication for paranoid schizophrenia. Also in July 2003, VA received a copy of a letter from private physician Byrch Williams, M.D., to Mr. Garcia, indicating that he had been treating Mr. Garcia "almost exclusively" since 1998. R. at 962. Dr. Williams stated:

> Dr. Smoker first mentions your paranoia on 8/5/1969 and rapidly increased a dose of Mellaril to 100 milligrams 4 times a day. Paranoia that requires this much medicine often begins in teenage years and rarely when someone is in their late 30's[,] as you were in 1969. I think this is consistent with your history of developing paranoia while you were in the service.

*Id.*

In September 2004, Mr. and Mrs. Garcia testified at a Board hearing. Mrs. Garcia stated that she had known Mr. Garcia since she was 14 years old and began dating him shortly after he left service. R. at 500. She reported that Mr. Garcia would tell her that people were following him, even when there was no one around, and that he would accuse her of things that he believed were true but were not. *Id.* She stated that she spoke to her own doctor who then asked to see Mr. Garcia, and "that's when I learned about paranoia." *Id.*

In December 2004, the Board remanded Mr. Garcia's claim for further development, including a VA psychiatric examination.

In February 2005, Mr. Garcia underwent the requested examination, conducted by Cheryl Greene, who is identified as the "examining physician." R. at 470. Dr. Greene stated that Mr. Garcia's claims file and medical records "were available to review prior to this examination," but did not state that she had, in fact, reviewed them. *Id.* She opined that Mr. Garcia met the diagnostic criteria for paranoid schizophrenia, "for which he has been treated for many years and claims he was first seen for paranoia in the service and that as likely as not this disorder started in service per the history given." R. at 471.

In October 2005, the Appeals Management Center (AMC) found Dr. Greene's report inadequate and issued the following examination inquiry:

> Return this case to Dr. Green[e] . . . for the reasons indicated below. Ensure that the case folder is provided and reviewed with a comment to the same included in the opinion report.
>
> Opinion Request
>
> The February 3, 2005[,] mental examination of this veteran found that it is as likely as not that his schizophrenia, paranoid[,] started in service per the history given. Please provide a rationale for this finding. The veteran's service history is limited due to the los[s] of records in the 1973 fire at the National Personnel Records Center, but available documentation does not manifest the type of service record common to personnel with his condition.
>
> He successfully completed two years of service, the full term of service for a draftee. His DD Form 214 (Separation Form) shows: he was promoted; he had no lost time for being absen[t] without leave (AWOL) or confinement; and he was awarded the Good Conduct Medal. Collectively[,] those facts indicate good discipline in service. Also, no bar to further service or reenlistment is annotated on the DD 214.
>
> Personnel with his condition[] in service[] are often identified, wrongly, as discipline problems until a mental condition is di[a]gnosed. This fact is usually manifest by having frequent discipline problems resulting in grade or rank reductions; frequent AWOL; confinement; early administrative[] discharged; and bars to reentry into the military annotated on the DD Form 214. His records reflect none of those things.
>
> The supporting rationale for concluding schizophrenia, paranoid[,] pre-existed and/or manifested in service must include studies, facts, treatment[,] and other evidence or information that shows the progression of this disability over time.

R. at 451.

Later that month, Dr. Greene provided an addendum in which she wrote only: "After review of [claims] file, [I] now feel it is impossible to say, without resorting to mere speculation, as to whether this veteran's schizophrenia, paranoid type[,] actually started in [s]ervice, without more documentation and records." R. at 449.

In September 2006, Mr. Garcia filed, through a veterans service organization, a brief outlining his arguments to the Board. Of note, Mr. Garcia's nonattorney representative wrote:

> From the record, we note the processing of the remand by the [AMC], Washington, D.C.[,] and the AMC Resource Center (RC), Cleveland, Ohio.

. . .

> The February 2005 VA examiner professed an opinion of service relationship of the diagnosed paranoid schizophrenia, "per the history given." The VAE report was returned to obtain "a rationale for this finding[]" and to obtain a specific declaration of claims file review.

R. at 426, 427.

In October 2006, the Board denied Mr. Garcia's claim for benefits. Mr. Garcia, through his current counsel, appealed to the Court, but subsequently moved to dismiss his appeal. The Court granted that motion in May 2007.

In July 2008, Mr. Garcia, through current counsel, filed a motion for revision of the October 2006 Board decision on the basis of CUE. Specifically, he argued that revision of the decision was required because (1) the Board had not afforded sufficient probative weight to several favorable independent medical conclusions; (2) he was entitled to "a greater duty to assist" because his records were destroyed in the 1973 National Personnel Records Center fire; and (3) given the evidence available at the time of the October 2006 Board decision, the Board should have given him the benefit of the doubt. R. at 371-73.

In April 2010, the Board specifically addressed these three allegations and denied Mr. Garcia's motion for revision of the October 2006 Board decision. In July 2010, Mr. Garcia filed a motion for reconsideration of the April 2010 Board decision, arguing that the Board's failure in October 2006 to consider Mrs. Garcia's September 2004 testimony was also CUE. The Board denied that motion in August 2010, finding that the Board in October 2006 specifically considered Mrs. Garcia's testimony. Mr. Garcia appealed to the Court.

In December 2011, the Court issued a memorandum decision affirming the Board's finding of no CUE in the October 2006 Board decision based on Mr. Garcia's three initial allegations of CUE, but found that Mr. Garcia's fourth allegation—that the Board in October 2006 failed to consider his wife's September 2004 Board hearing testimony—was a distinct allegation of CUE that the Board was required to address. More specifically, the Court stated that "[t]his is a rare instance where an appellant may demonstrate that the correct facts were not before the Board based on the evidence of record." R. at 214 (citing *Caffrey v. Brown*, 6 Vet.App. 377, 384 (1994) (Kramer, J., concurring)). The Court continued: "Because the 2006 [Board member] misstated the obvious content of the record, the facts known at the time were not really before him." R. at 215.

4

The Court concluded that the Board's conclusion in April 2010 that the Board in October 2006 plainly considered and rejected Mrs. Garcia's testimony lacked adequate reasons or bases. Accordingly, that matter alone was remanded.

The Court in December 2011 also acknowledged that Mr. Garcia "devote[d] considerable briefing effort decrying what he consider[ed] inappropriate influence exerted on [Dr. Greene] by the rating specialist and the [AMC]." R. at 212. The Court further stated: "The appellant discovered the involvement of the rating specialist and [AMC] only when reviewing the record on appeal." R. at 213. The Court found, however, that Mr. Garcia had "not argue[d] that this sequence of events constituted a violation of constitutional due process," but a failure of VA's enhanced duty to assist in cases where a claimant's service records were destroyed in the National Personnel Records Center fire. *Id.* The Court determined that, as an allegation of CUE, the constitutional theory could not succeed because it had not presented to the Board. The Court therefore dismissed Mr. Garcia's appeal "insofar as it advance[d] a theory of CUE based on the behavior of the rating specialist and [AMC] with regard to the VA examination report of February 2005." *Id.*

In January 2012, Mr. Garcia died. Later that year, Mrs. Garcia was substituted for her husband in this matter.

In October 2012, the Board explained that, in light of the Court's December 2011 determination that the correct facts were not before the Board in October 2006, the only remaining question regarding the fourth allegation of CUE[1] was whether the Board's consideration of Mrs. Garcia's September 2004 testimony in October 2006 would have changed the outcome of the decision. The Board found that there was both positive and negative evidence of continuity of symptoms since service, and, therefore, the matter was one related to the weight of the evidence. The Board correctly noted that an error in the weight afforded the evidence by the Board does not rise to the level of CUE. R. at 158; *see Russell v. Principi*, 3 Vet.App. 310, 313-14 (1992) (en banc) (stating that the alleged error must be "undebatable," not merely "a disagreement as to how the facts were weighed or evaluated"). The Board also considered Mrs. Garcia's testimony along with the other evidence of record and concluded that it was not "absolutely clear" that, but for the

---

[1] The Board readjudicated the three original allegations of CUE, despite the fact that the Court in December 2011 affirmed the April 2010 Board decision as to those matters. R. at 156-57. The Court's December 2011 memorandum decision is the law of the case on those matters, and the Court need not revisit them here.

5

Board's failure to consider the testimony, the outcome of the October 2006 Board decision would have been favorable to Mr. Garcia. R. at 158-59.

In January 2013, Mrs. Garcia filed a motion to vacate and reconsider the October 2012 Board decision. Her motion included, for the first time, an allegation that the October 2005 AMC examination inquiry constituted a violation of due process. R. at 36-38. In July 2013, the Board denied Mrs. Garcia's motion. Mrs. Garcia appealed to the Court, arguing that the Board erred in finding no CUE in the October 2006 decision because the Board did not address her argument regarding due process and failed to readjudicate the matter of her September 2004 testimony in accordance with the Court's December 2011 remand.

In October 2014, the Court issued a memorandum decision again remanding the matter of CUE based on the Board's consideration of Mrs. Garcia's September 2004 testimony, finding that the Board considered only whether the testimony established that Mr. Garcia's paranoia began *in* service, while the testimony, in fact, related to whether his paranoia began *within one year of discharge*. R. at 1119 (citing 38 C.F.R. §§ 3.307, 3.309 (2014)). The Court again dismissed the allegation of CUE based on a due process violation, concluding that, because the allegation was never presented to the Board, the Court lacked jurisdiction to consider it. The Court reiterated that "Mr. Garcia has not raised any theories of CUE based on constitutional error," and that, to the extent that Mrs. Garcia relied an August 2012 letter to the Board, "th[at] letter d[id] not refer to or raise a valid theory of CUE as it contain[ed] only the single, incorrect statement that the Court's 2011 decision noted a constitutional defect in the Board's 2006 decision." R. at 1120; *see* R. at 194.

In May 2015, the Board issued the decision on appeal, finding that the Board's failure in October 2006 to consider Mrs. Garcia's September 2004 Board hearing testimony did not constitute CUE because the error did not manifestly change the outcome of the decision. This appeal followed.

## II. ANALYSIS

To begin, the Court must satisfy itself that it has jurisdiction over the constitutional matter, which arrived at the Court by way of the Board's adverse decision on the fourth allegation of CUE. *See Barnett v. Brown*, 83 F.3d 1380, 1383 (Fed. Cir. 1996) ("[A] statutory tribunal must ensure that it has jurisdiction over each case before adjudicating the merits . . . . [A] potential jurisdictional

6

defect may be raised by the court or tribunal, sua sponte . . . and, once apparent, must be adjudicated."); *Marsh v. West*, 11 Vet.App. 468, 469 (1998) ("[T]he Court has jurisdiction to assess its own jurisdiction."). If the Board lacked jurisdiction to entertain that allegation, the Court likewise lacks jurisdiction to review it, and this appeal must be dismissed. *See* 38 U.S.C. § 7252(a); *Ledford v. West*, 136 F.3d 776, 779 (Fed. Cir. 1998) (stating that his Court's jurisdiction is "premised on and defined by the Board's decision concerning the matter being appealed").

## A. Timeliness of the Fourth CUE Allegation

A prior final Board decision must be reversed or revised where evidence establishes clear and unmistakable error. *See* 38 U.S.C. § 7111(a). CUE is established when the following conditions are met: First, either (1) the correct facts in the record were not before the adjudicator or (2) the statutory or regulatory provisions in existence at the time were incorrectly applied. *See Damrel v. Brown*, 6 Vet.App. 242, 245 (1994). Secondly, the alleged error must be "undebatable," not merely "a disagreement as to how the facts were weighed or evaluated." *Russell*, 3 Vet.App. at 313-14. Finally, the commission of the alleged CUE must have "manifestly changed the outcome" of the decision being attacked at the time that decision was rendered. *Id.*; *see Bustos v. West*, 179 F.3d 1378, 1380 (Fed. Cir. 1999) (expressly adopting the "manifestly changed the outcome" language in *Russell*).

In March 2011, approximately eight months before the Court issued its first memorandum decision in this matter, the Court issued a decision in *Hillyard v. Shinseki*, 24 Vet.App. 343 (2011). In that case, the Court held that an appellant has only one opportunity to raise allegations of CUE for each claim decided in a Board decision, and any subsequent attempt to raise a CUE challenge to the same claim contained in a Board decision must be dismissed with prejudice. 24 Vet.App. at 352-53. Although the facts of that case were much simpler—Mr. Hillyard attempted to raise a new CUE challenge several years after his earlier CUE challenge was denied and had become final—we find that case unequivocal and controlling under the circumstances presented here.

Here, although the Court in December 2011 remanded Mr. Garcia's CUE motion, raising the question of whether a new CUE challenge may be raised where the Court remands the initial CUE challenge, it is only in hindsight that this issue arises. It would be illogical to hold that new allegations of CUE in a Board decision may be raised on remand because, at the time the initial CUE motion is filed, it is impossible to know whether, at some point in the future, the Court will remand the initial CUE challenge. The rule established in *Hillyard* rightly requires that all possible

7

errors in a final Board decision be raised at the time a motion for revision of that Board decision based on CUE is filed. No later CUE challenges to a Board decision may be entertained.

In light of the rule in *Hillyard*, the Court concludes that, in both December 2011 and October 2014, it improperly entertained the fourth allegation of CUE regarding Mrs. Garcia's hearing testimony. There is no dispute that Mr. Garcia's initial motion for revision of the October 2006 Board decision based on CUE was filed in July 2008 and raised only three arguments. R. at 371-73. He did not raise the fourth allegation regarding his wife's testimony until his July 2010 motion for reconsideration of the April 2010 Board decision that adjudicated his three initial CUE allegations. R. at 276-85. There is also no dispute that *Hillyard* was controlling law at the time of the December 2011 memorandum decision. Accordingly, in December 2011, the proper course of action was for the Court to dismiss Mr. Garcia's appeal of the Board's decision on the fourth allegation of CUE. *See Hillyard*, 24 Vet.App. at 354. That remains the proper course of action, and the Court will therefore dismiss Mrs. Garcia's appeal of the May 2015 Board decision to the extent that it pertains to the Board's denial of CUE in the October 2006 Board decision based on her September 2004 hearing testimony. The Court regrets its error and the subsequent effort and expense its error imposed on the parties. Nevertheless, the Court may not create jurisdiction where none exists.

### B. Due Process Allegation

Having found that the Court lacked, and lacks, jurisdiction to entertain Mrs. Garcia's fourth CUE allegation, we must next consider whether we have jurisdiction to entertain her constitutional due process argument. It is well settled that entitlement to VA benefits is a property interest protected by the Due Process Clause of the Fifth Amendment of the U.S. Constitution. *Cushman v. Shinseki*, 576 F.3d 1290, 1298 (Fed. Cir. 2009). Accordingly, claimants are entitled to a "fundamentally fair adjudication of [their] claim[s]." *Id.* at 1296. Mrs. Garcia contends that the AMC's October 2005 examination inquiry so plainly sought a negative nexus opinion that it violated her husband's right to the impartial development of evidence. *See Austin v. Brown*, 6 Vet.App. 547, 552 (1994) ("[B]asic fair play requires that evidence be procured by the agency in an impartial, unbiased, and neutral manner."). The Court holds that it need not determine whether a constitutional violation occurred because this matter is not properly before us.

To begin, there is no dispute that this matter was, when viewed in the light most favorable to Mrs. Garcia, first raised to the Court in 2011 in Mr. Garcia's briefs, and to the Board in the

January 2013 motion for revision of the October 2012 Board decision. Therefore, to the extent that Mrs. Garcia intended to allege a due process violation as an allegation of CUE in the October 2006 Board decision, that argument must fail in light of *Hillyard*, as discussed above. Further, to the extent that the due process argument is before the Court only as a result of the improper December 2011 and October 2014 remands by the Court, the Court lacks jurisdiction to entertain it. *See* 38 U.S.C. § 7252(a); *Ledford*, 136 F.3d at 779.

At oral argument, counsel for Mrs. Garcia argued that due process violations are special and may be raised at any time, regardless of the finality of the underlying decision. The U.S. Court of Appeals for the Federal Circuit (Federal Circuit), however, appears to disagree. In *Cook v. Principi*, the Federal Circuit made clear that there are only two exceptions to finality in the veterans benefits system: The submission of new and material evidence in a previously and finally decided claim and CUE in a final RO or Board decision. 318 F.3d 1334, 1339 (Fed. Cir. 2002) (en banc) ("The statutory scheme provides only two exceptions to the rule of finality."); *see* 38 U.S.C. § 5109A(a) ("A decision by the Secretary . . . is subject to revision on the grounds of clear and unmistakable error. If evidence establishes the error, the prior decision shall be reversed or revised."); 38 U.S.C. § 5108 ("If new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary shall reopen the claim and review the former disposition of that claim.").

In dissent, one judge of the Federal Circuit asserted that a due process violation could vitiate the finality of a decision. *Cook*, 318 F.3d at 1350-58 (Gajarsa, J., dissenting). In a footnote, the majority addressed this contention:

> The Due Process Clause question was not briefed by the parties or argued to us. Nevertheless, assuming arguendo that a breach of the duty to assist may implicate the Due Process Clause, we note that the claim adjudication process before the RO and the Board has long provided a structure that affords a veteran a hearing. *See* 38 C.F.R. §§ 3.3-3.14; 19.0-19.7 (1949). During the adjudication of his claim, a veteran may always assert that there has been a breach of the duty to assist. Moreover, as noted, under the regime that has existed since 1988, if the Veterans Court determines that the VA failed to comply with the duty to assist, the court may vacate the decision being appealed and remand the case for further consideration in compliance with the duty to assist. *Pond* [*v. West*], 12 Vet.App. [341,] 346 [(1999)].
>
> If, however, a breach of the duty to assist is not known to the veteran during the adjudication of his claim, and becomes known to the veteran only after the decision to deny his claim for benefits has become final, the veteran may only apply to have

9

the final judgment reopened through the two avenues provided by Congress, CUE and new and material evidence. These two avenues constitute significant departures from the normal rule that final judgments cannot be reopened. For the reasons stated infra in this opinion, a breach of the duty to assist may not form the predicate for a CUE claim. Whether it is possible for a veteran to ameliorate the potential harm of a breach of the duty to assist with a claim of new and material evidence is not a matter before us. In any event, the possibility that an error may occur during the claim adjudication process is not a reason to hold the process in violation of the Due Process Clause and therefore vitiate the rule of finality.

*Id.* at 1341 n.9. Although this language is plainly dicta, as this issue was not briefed or argued to the Federal Circuit in that case, it is nevertheless instructive, and we adopt this reasoning in holding that even an allegation of a due process violation may not vitiate the finality of a decision.

The Court notes that, in his briefs in 2011 and again at oral argument before the Court in this case, counsel for Mrs. Garcia represented that he was not aware of the October 2005 AMC inquiry when he filed the July 2008 motion for revision of the October 2006 Board decision based on CUE. Although the Court has no reason to doubt counsel's representation, it nevertheless appears that the October 2005 AMC inquiry was in Mr. Garcia's claims file at least as early as September 2006. As noted in Part I above, Mr. Garcia's nonattorney representative plainly quoted that inquiry in his September 2006 brief to the Board. *Compare* R. at 427 (September 2006 brief), *with* R. at 451 (October 2005 AMC inquiry). Because the potential duty to assist violation was known before the October 2006 Board decision, it should have been raised at that time, on direct appeal, as the Federal Circuit stated in *Cook*.

Finally, in her briefs, Mrs. Garcia cites 38 C.F.R. § 20.904(a) for the proposition that "[a]n appellate decision may be vacated at any time on the Board's (or Court's) own motion when there has been a denial of due process." Appellant's Br. at 11. To the extent that Mrs. Garcia challenges the Board's July 2013 denial of her January 2013 motion to vacate and reconsider, which first raised the constitutional issue, the Court lacks jurisdiction over that matter. The Court "[has] no jurisdiction to consider the Chairman's denial of [a motion for] reconsideration," *Mayer v. Brown*, 37 F.3d 618, 619 (Fed. Cir. 1994), and the Court's caselaw requires it to consider a motion to vacate no differently than a motion for reconsideration with respect to appealability. *See Harms v. Nicholson*, 20 Vet.App. 238, 243 (2006) (en banc). Moreover, as Mrs. Garcia acknowledged at oral argument, § 20.904(a) empowers *the Board* to vacate its own decision on the basis of a due process violation, not the Court. 38 C.F.R. § 20.904 (2017) ("An appellate decision may be

vacated by the [Board] at any time upon request of the appellant or his or her representative, or on the Board's own motion" where the Board determines there has been a violation of due process).

In light of this discussion, the Court concludes that we must dismiss Mrs. Garcia's allegation of a due process violation in the development of her husband's claim.

## III. CONCLUSION

After consideration of the appellant's and the Secretary's briefs, the matters raised at oral argument, and a review of the record on appeal, this appeal is DISMISSED with prejudice.